MGD/JPL:AJE/PJC
F.# 2020R00105

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

     - against -

                                    Cr. No. 20-384 (WFK)

GORGI NAUMOVSKI,

           Defendant.

– – – – – – – – – – – – – – – X

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR TRANSFER VENUE

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

Andrew J. Estes
Patrick J. Campbell
Trial Attorneys
Criminal Division, Fraud Section
U.S. Department of Justice

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ...................................................................................................... 1

ARGUMENT ....................................................................................................................... 3

    I.    Motion to Dismiss ........................................................................................................ 3

        A.  Legal Standard ........................................................................................ 3

        B.  Analysis.................................................................................................. 6

    II.   Motion to Transfer Venue........................................................................................10

        A.  Legal Standard ...................................................................................... 10

        B.  Analysis................................................................................................ 11

CONCLUSION ................................................................................................................... 17

TABLE OF AUTHORITIES

**Cases**

United States v. Alfonso, 143 F.3d 772 (2d Cir. 1998).......................................................... 7

United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181 (2d Cir. 1989) ............................ 9, 10

United States v. Bellomo, 263 F. Supp. 2d 561 (E.D.N.Y. 2003) ............................................... 3, 6

United States v. Bezmalinovic, 962 F. Supp. 435 (S.D.N.Y. 1997) ............................................... 9

United States v. Bozza, 365 F.2d 206 (2d Cir. 1966) ............................................................... 9

United States v. Carey, 152 F. Supp. 2d 415 (S.D.N.Y. 2001) ................................................... 16

United States v. Cournoyer, No. 12-CR-65 (SLT), 2012 WL 6539659
   (E.D.N.Y. Dec. 14, 2012) ........................................................................................ 12

United States v. Delgado, No. 19-CR-34 (GWC), 2020 WL 2924482
   (D. Vt. June 3, 2020) ................................................................................................. 4

United States v. Estrada, 880 F. Supp. 2d 478 (S.D.N.Y. 2012) ............................................... 17

United States v. Flom, 14-CR-507 (RRM), 2015 WL 6506628
   (E.D.N.Y. Oct. 27, 2015) ..................................................................................... 11, 14

United States v. Geibel, 369 F.3d 682 (2d Cir. 2004) ............................................................... 9, 10

United States v. Guastella, 90 F. Supp. 2d 335 (S.D.N.Y. 2000) ..................................... 10, 12, 13

United States v. Ji, 21-CR-265 (PKC), 2022 WL 595259 (E.D.N.Y. Feb. 28, 2022) .................... 6

United States v. Keuylian, 602 F.2d 1033 (2d Cir. 1979) ........................................................... 16

United States v. Lange, 834 F.3d 58, 69 (2d Cir. 2016) ..................................................... passim

United States v. Mackey, ___ F. Supp. 3d ___, 2023 WL 363595 (E.D.N.Y. 2023) ................... 6

United States v. Maldonado-Rivera, 922 F.2d 934 (2d Cir. 1990) ............................................ 11

United States v. Motz, 652 F. Supp. 2d 284 (E.D.N.Y. 2009) ................................................... 10

United States v. Naranjo, 14 F.3d 145 (2d Cir. 1994) ............................................................... 3, 4, 8

United States v. Ng., No. 18-CR-538 (MKB), Dkt. No. 84-1
   (E.D.N.Y. Sept. 10, 2021) .......................................................................................... 4

United States v. Ohle, 678 F. Supp. 2d 215 (S.D.N.Y. 2010) ..................................................... 3

United States v. Posner, No. 20-CR-162 (JPO), 2022 WL 446012
   (S.D.N.Y. Feb. 14, 2022) ........................................................................................... 7

United States v. Reed, 773 F.2d 477 (2d Cir. 1985) ............................................................... 5, 9

United States v. Riley, 296 F.R.D. 272 (S.D.N.Y. 2014) ..................................................... 13, 16

United States v. Rommy, 506 F.3d 108 (2d Cir. 2007) ............................................................... 4

United States v. Royer, 549 F. 3d 886 (2d Cir. 2008) ............................................................... 4, 7

United States v. Rutigliano, 790 F.3d 389 (2d Cir. 2015) ........................................................... 5, 8

United States v. Saavedra, 223 F.3d 85 (2d Cir. 2000 ............................................................... 5

United States v. Spy Factory Inc., 951 F. Supp. 450 (S.D.N.Y. 1997)................................ 12, 15, 16

United States v. Stephenson, 895 F.2d 867 (2d Cir. 1990) ...................................................... 11, 14

United States v. Sutton, 13 F.3d 595 (2d Cir. 1994) ............................................................... 3

United States v. Svoboda, 347 F.3d 471 (2d Cir. 2003) ............................................................... 4

United States v. Tang Yuk, 885 F.3d 57 (2d Cir. 2018) ............................................................... 5, 8

United States v. Thompson, 896 F.3d 155 (2d Cir. 2018) ........................................................... 9

United States v. U.S. Steel Corp., 233 F. Supp. 154 (S.D.N.Y. 1964) .................................... 10, 11

United States v. Wilson, No. 01-CR-53 (DLC), 2001 WL 798018
  (S.D.N.Y. July 13, 2001) ................................................................................................. 15

**Statutes**

U.S. Const. art. III, §2, cl. 3 ........................................................................................... 3
18 U.S.C. § 1347 ............................................................................................................. 7
18 U.S.C. § 3237(a) ........................................................................................................ 4

**Rules**

Fed. R. Crim. P. 18 ......................................................................................................... 3
Fed. R. Crim. P. 21(b) .................................................................................................. 10

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in opposition to the defendant Gorgi Naumovski's July 17, 2023 motion to dismiss the Indictment for lack of venue or to transfer venue in the above-captioned case.  See ECF Dkt. No. 58-1 ("Def. Mot." or the "Motion").  As discussed more fully below, venue is proper in the Eastern District of New York as criminal conduct occurred in the district, and the defendant has failed to establish that trial here would be so unduly burdensome that fairness requires transfer to the Middle District of North Carolina.  The Court should deny the Motion in its entirety.

STATEMENT OF FACTS[1]

Beginning in approximately April 2016, the defendant and others, including Co-Conspirator 1, gained control of Life Source Medical, a durable medical equipment ("DME") company.  From approximately April 2016 to December 2018, the defendant and his co-conspirators used Life Source Medical to submit false and fraudulent claims to Medicare for expensive DME, including back, knee and wrist braces that were not eligible for payment because, among other reasons, the claims were procured through bribes and kickbacks.

The scheme involved, among other things, the following: (1) Medicare beneficiaries around the United States, including beneficiaries who were in the Eastern District of New York, spoke with telemarketers on the phone, and the telemarketers connected the beneficiaries with doctors by phone to prescribe expensive braces; (2) the doctors signed prescriptions, order forms and other documentation ("Doctors' Orders") that were necessary  to

---

[1] The factual background set forth below is a summary of facts that the government expects to prove at trial, including through witness testimony and documentary and other evidence.  The government has not endeavored to set forth all facts that it expects to prove at trial and does not intend this to be a full proffer of evidence.

submit claims to Medicare for supplying DME; (3) the defendant, together with others, paid bribes and kickbacks to purchase these Doctors' Orders; (4) the defendant, together with others, caused the DME to be shipped to beneficiaries at their home, including within the Eastern District of New York, and employees called the beneficiaries to confirm they received the DME; and (5) Life Source Medical submitted claims to Medicare to be reimbursed for providing DME to beneficiaries, including for the beneficiaries who resided in and received the DME in the Eastern District of New York.

This conspiracy involved acts conducted around the country as well as internationally: Life Source Medical was based in Greensboro, North Carolina; the defendant was generally in Illinois; Co-Conspirator 1 was based in South Carolina; the telemarketing operations were generally overseen by a co-conspirator in the Philippines; and beneficiaries were scattered across the United States, including several dozen in the Eastern District of New York. Between approximately April 2016 and December 2018, Life Source Medical submitted claims to Medicare for providing DME to 1,936 beneficiaries. Of these claims, the state with the second-highest number of beneficiaries was New York, with claims for 177 beneficiaries (only California was higher, with 222 beneficiaries). More than 50 beneficiaries resided in the Eastern District of New York.

On September 18, 2020, a grand jury in the Eastern District of New York returned a one-count indictment against the defendant charging him with conspiracy to commit health care fraud. On July 17, 2023, almost three years after his indictment, the defendant moved to dismiss the indictment for lack of venue or transfer the case to the Middle District of North Carolina.

ARGUMENT

I.    Motion to Dismiss

      A.    Legal Standard

             The U.S. Constitution provides that a defendant shall be tried in the place where

the crimes were committed.  U.S. Const. art. III, §2, cl. 3; amend. VI.  Rule 18 of the Federal

Rules of Criminal Procedure codifies this right and provides that, "[u]nless a statute or these

rules permit otherwise, the government must prosecute an offense in a district where the offense

was committed."  Fed. R. Crim. P. 18.  To satisfy its burden with regard to pleading venue,

"[t]he government need only allege that criminal conduct occurred within the venue, 'even if

phrased broadly and without a specific address or other information . . . .'"  United States v.

Ohle, 678 F. Supp. 2d 215, 231 (S.D.N.Y. 2010) (quoting United States v. Bronson, No. 05-CR-

714 (NGG), 2007 WL 2455138, at *4 (E.D.N.Y. Aug. 23, 2007) (internal quotation marks

omitted)).  At the motion to dismiss stage, "the allegations of the indictment must be taken as

true."  United States v. Bellomo, 263 F. Supp. 2d 561, 579 (E.D.N.Y. 2003).  "The question of

whether there is sufficient evidence to support venue is appropriately left for trial."  Ohle, 678 F.

Supp. 2d at 231.

             At trial, the government bears the burden of proving venue by a preponderance of

the evidence.  United States v. Lange, 834 F.3d 58, 69 (2d Cir. 2016); United States v. Naranjo,

14 F.3d 145, 146 (2d Cir. 1994).  Venue may be proved by circumstantial evidence.  Lange, 834

F.3d at 69.  If the issue of venue is "squarely interposed" by the defense, the question must be

submitted to a jury.  United States v. Sutton, 13 F.3d 595, 598 (2d Cir. 1994) (quoting United

States v. Grammatikos, 633 F.2d 1013, 1022 (2d Cir. 1980)).  Courts in the Second Circuit

typically defer until trial a ruling on the propriety of the prosecution's choice of venue.  See, e.g.,

United States v. Ng., No. 18-CR-538 (MKB), Dkt. No. 84-1 at *42-43 (E.D.N.Y. Sept. 10,

3

2021); United States v. Delgado, No. 19-CR-34 (GWC), 2020 WL 2924482, at *2 (D. Vt. June 3, 2020) (collecting cases and recognizing "the practice of deferring a ruling on the propriety of the prosecution's choice of venue to trial").

Absent an express statutory provision to the contrary, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which offense was begun, continued, or completed." 18 U.S.C. § 3237(a). Venue is proper both "in a district where (1) the defendant intentionally or knowingly causes an act in furtherance of the charged offense to occur in the district of venue or (2) it is foreseeable that such an act would occur in the district of venue." United States v. Svoboda, 347 F.3d 471, 482-84 (2d Cir. 2003). Such an overt act may be "any act, innocent or illegal, as long as it is done in furtherance of the object or purpose of the conspiracy. . . . This includes not just acts by co-conspirators but also acts that the conspirators caused others to take that materially furthered the ends of the conspiracy." Lange, 834 F.3d at 70 (citing United States v. Royer, 549 F. 3d 886, 896 (2d Cir. 2008) (internal quotation marks omitted)).

The defendant's physical presence in the district during the charged conduct is unnecessary for proper venue, as "a defendant need not himself have ever been physically present in a district for a conspiracy charge against him to be venued there." See United States v. Rommy, 506 F.3d 108, 120 (2d Cir. 2007). "In a prosecution for conspiracy, venue is proper in any district in which 'an overt act in furtherance of the conspiracy was committed by any of the coconspirators.'" Naranjo, 14 F.3d at 147 (quoting United States v. Ramirez-Amaya, 812 F.3d 813, 816 (2d Cir. 1987)). Moreover, "it must have been 'reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district

4

where the prosecution is brought." United States v. Tang Yuk, 885 F.3d 57, 69 (2d Cir. 2018).

"Actual knowledge that an overt act" occurred in the district is unnecessary: "venue will lie if a

reasonable jury could find that it was 'more probable than not' that the defendant 'reasonably

could have foreseen' that part of the offense would take place in the district of prosecution." Id.

(quoting United States v. Davis, 689 F.3d 179, 189 (2d Cir. 2012)).

Where venue may properly lie in more than one district under a continuing

offense theory, the court is sometimes tasked with asking "whether the criminal acts in question

bear 'substantial contacts' with any given venue." United States v. Saavedra, 223 F.3d 85, 93

(2d Cir. 2000) (quoting United States v. Reed, 773 F.2d 477, 481 (2d Cir. 1985)).[2]  The

substantial contacts inquiry, however, is not a "formal constitutional test . . . ." Tang Yuk, 885

F.3d at 70.  The Second Circuit has recognized that courts make the substantial contacts inquiry

"only if the defendant argues that his prosecution in the contested district will result in a hardship

to him, prejudice him, or undermine the fairness of the trial." United States v. Rutigliano, 790

F.3d 389, 399 (2d Cir. 2015); see also Lange, 834 F.3d at 75.  And where "an overt act in

furtherance of a criminal conspiracy has been committed in the district . . . this supplemental

inquiry has no relevance." Tang Yuk, 885 F.3d at 70.  "A defendant who is participating in a

conspiracy that is being conducted, in part, in the district of prosecution necessarily has sufficient

'substantial contacts' to justify a finding of venue that is otherwise proper." Id. (collecting

cases).

---

[2] The substantial contacts test "takes into account four main factors: (1) the site of the crime, (2) its elements and nature, (3) the place where the effect of the criminal conduct occurs, and (4) suitability of the venue chosen for accurate factfinding."  Saavedra, 223 F.3d at 93.

B.     Analysis

The Indictment alleges that the crime occurred "within the Eastern District of New York and elsewhere" (Indictment ¶ 11), thus providing notice of proper venue.  See Bellomo, 263 F. Supp. 2d at 579 (denying motion to dismiss where indictment alleged offenses occurring "within the Eastern District of New York and elsewhere").  This language alone is sufficient to defeat the defendant's motion, as courts in this Circuit "have repeatedly declined to dismiss on venue grounds indictments alleging that the offenses occurred within the Eastern District of New York and elsewhere."  United States v. Ji, 21-CR-265 (PKC), 2022 WL 595259, at *9 (E.D.N.Y. Feb. 28, 2022) (collecting cases) (internal quotation marks omitted); Bellomo, 263 F. Supp. 2d at 579 (allegation "that the offenses occurred 'within the Eastern District of New York and elsewhere,' suffices to sustain this pretrial attack on venue").  The Indictment provides even more detail, including that the defendant and others submitted "false and fraudulent claims to Medicare for the supply of orthotic braces and other DME to beneficiaries, including beneficiaries who resided in the Eastern District of New York." (Indictment ¶ 7).  Because the Indictment adequately alleges venue, the motion to dismiss should be denied.

Similarly, defendant makes premature arguments regarding the reasonable foreseeability of acts within the Eastern District of New York.  (See Def. Mot. at 5 (arguing that "there is no evidence that the sole alleged acts occurring in this district – sending DME to Eastern District of New York customers whose Doctor's Orders had been purchased – were reasonably foreseeable to Mr. Naumovski")).  But the foreseeability of these acts should be determined by the jury, and may not be used to "artificially limit the number of districts in which venue can be properly laid" at this stage.  United States v. Mackey, ___ F. Supp. 3d ___, 2023 WL 363595, at *6 (E.D.N.Y. 2023).  Inquiries into the sufficiency of the evidence are premature, where, as here, the government has not made a "full proffer of the evidence it intends to present

6

at trial . . . ."  United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998).  Simply put, the

defendant's arguments should be made to the jury or in a post-trial motion, not in a motion to

dismiss.  See United States v. Posner, No. 20-CR-162 (JPO), 2022 WL 446012, at *2 (S.D.N.Y.

Feb. 14, 2022) (denying motion to dismiss and recognizing that arguments regarding whether

"acts taking place in this District were not reasonably foreseeable to him" were premature and

"properly suited to a post-trial motion").

        Even if the defendant could challenge the venue evidence at this time, his claim

would fail.  The defendant asserts that the "sole link to the Eastern District to New York is that a

small percentage of individuals who received braces from Life Source . . . happened to reside in

the Eastern District of New York."  (Def. Mot. 5).  But the defendant's argument minimizes the

contacts with the district: the defendant's company, Life Source, shipped or caused the shipment

of orthotic braces and other equipment into this district so that it could bill Medicare for the

expensive DME.  This was an essential step of the scheme as well as the charge.  See 18 U.S.C.

§ 1347 (prohibiting a scheme or artifice to defraud a health care benefit program "in connection

with the delivery of or payment for health care benefits, items, or services" (emphasis added)).

Thus, these alleged acts were "crucial to the success of the scheme."  Royer, 549 F.3d at 894-95.

So long as any act in furtherance of the charged offense occurs in the district, and the act is

reasonably foreseeable to the defendant, venue will lie.  See, e.g., Lange, 834 F.3d at 69

(explaining that "a defendant need not intentionally or knowingly cause an act in furtherance of a

charged offense to occur in the district to establish venue" and that "it is enough that it is

foreseeable [to the defendant] that such an act would occur in the district and that act does in fact occur" (internal quotations and citations omitted, brackets in original).[3]

In addition, the government expects the evidence to show that Life Source Medical sent a significant volume of DME to beneficiaries at their homes within the Eastern District of New York. Indeed, according to the claims data, the second-most common state of residence for Life Source Medical's beneficiaries was New York (177 beneficiaries, or almost 10%), and more than 50 of these beneficiaries resided in the Eastern District of New York. Thus, it would be reasonably foreseeable that shipments of the DME would be made into a district as large and populous as the Eastern District of New York. See Mackey, 2023 WL 363595, at *9 (concluding it would be reasonably foreseeable that Tweets from a Manhattan-based Twitter personality with thousands of followers . . . would reach or pass through a judicial district as large as the Eastern District of New York").

Further, phone calls in furtherance of the conspiracy also occurred with beneficiaries in the Eastern District of New York. Venue is proper in any district in which an electronic communication is sent or received. See Lange, 834 F.3d at 70 ("Venue is also proper in the district where an electronic communication was received." (collecting cases)); Naranjo, 14 F.3d at 147 ("[P]hone calls from one district into another can establish venue in the latter district so long as they further the ends of the conspiracy."). The government anticipates that evidence at trial will establish that multiple beneficiaries in the district made or received phone calls to or from telemarketers or ordering physicians. In these phone calls, beneficiaries were offered

---

[3] Although the defendant relies on the "substantial contacts" inquiry, he does not argue that prosecution in the Eastern District of New York would result in a hardship or prejudice to him, or undermine the fairness of the trial. See Rutigliano, 790 F.3d at 399. In any event, because overt acts occurred within the Eastern District of New York, this inquiry is irrelevant. Tang Yuk, 885 F.3d at 70.

orthotic braces that Medicare would pay for, and they were then connected to the doctors who ultimately prescribed them.  As such, dozens of Doctors' Orders, which Life Source Medical used to make fraudulent claims to Medicare, were derived from phone calls with beneficiaries residing in the Eastern District of New York.

Moreover, venue is not as circumscribed as the defendant would like it to be.  The fact that other conduct also occurred outside of the district is immaterial.  See United States v. Thompson, 896 F.3d 155, 171 (2d Cir. 2018) ("[V]enue may lie in more than one place if the acts constituting the crime and the nature of the crime charged implicate more than one location.").  Contrary to the defendant's belief, the Constitution "does not command a single exclusive venue."  Reed, 773 F.2d at 480.

Defendant's reliance on various cases involving merely "ministerial" or "prior and preparatory" acts is misplaced.  (Def. Mot. at 4).  The defendant's reliance on these cases is inapposite because they involve substantive offenses, not conspiracy charges.  See, e.g. United States v. Bezmalinovic, 962 F. Supp. 435, 437 (S.D.N.Y. 1997) (ministerial actions taken by a bank were insufficient to establish venue for a substantive charge of bank fraud, in violation of 18 U.S.C. § 1344); United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1190-91 (2d Cir. 1989) ("preparatory" orders were insufficient to establish venue for substantive count of introducing adulterated and misbranded apple juice into interstate commerce in violation of 18 U.S.C. §§ 331(a), 342(b)); United States v. Geibel, 369 F.3d 682, 695-96 (2d Cir. 2004) (while venue was proper for conspiracy, venue was not established for individual counts of insider trading); United States v. Bozza, 365 F.2d 206, 220-22 (2d Cir. 1966) (evidence was insufficient to establish venue for substantive counts of receiving stolen stamps based on phone call prior to the offense, during which the defendant agreed to buy stolen property and negotiated the price).

9

Here, by contrast, the telephone calls with beneficiaries in the Eastern District and mailing of the DME to beneficiaries in the Eastern District are not merely acts prior or preparatory to substantive offenses, but were acts in furtherance of the conspiracy.  Indeed, in Beech-Nut Nutrition Corp., the Second Circuit recognized that while certain mailings and telephone calls in the district did not necessarily establish venue for the substantive offenses, they were overt acts in furtherance of the conspiracy.  See 871 F.2d at 1191 ("Though the orders for the adulterated concentrate were undoubtedly acts in furtherance of the conspiracy, they were not part of the substantive § 331(a) offenses . . . ."); see also Geibel, 369 F.3d at 696 (venue sufficient for insider trading conspiracy based on a co-conspirator sending a letter in New York and participating in a phone call with an undercover FBI agent in New York, albeit not for the substantive offense).

Accordingly, because the Indictment adequately alleges venue and because the defendant's reasonable foreseeability argument is premature, the Court should deny the Motion.

II.     Motion to Transfer Venue

    A.     Legal Standard

Pursuant to Rule 21(b) of the Federal Rules of Criminal Procedure ("Rule 21"), "[u]pon the defendant's motion, the court may transfer the proceeding, or one or more counts, against that defendant to another district for the convenience of the parties, any victim, and the witnesses, and in the interest of justice." Fed. R. Crim. P. 21(b).  "'As a general rule, a criminal prosecution should be retained in the original district' in which it was filed." United States v. Motz, 652 F. Supp. 2d 284, 291 (E.D.N.Y. 2009) (quoting United States v. U.S. Steel Corp., 233 F. Supp. 154, 157 (S.D.N.Y. 1964)).  "Accordingly, the burden of justifying a transfer under [Rule] 21 rests with the defendant." Id. (citing United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000)).  Disposition of a Rule 21(b) motion is committed to the sound discretion

10

of the district court.  United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990).  The

Second Circuit has enumerated a non-exhaustive list factors that may be considered in

determining a Rule 21(b) motion, often referred to as the "Platt factors":

> (a) location of the defendants; (b) location of the possible witnesses;
> (c) location of the events likely to be at issue; (d) location of relevant
> documents and records; (e) potential for disruption of the
> defendants' businesses if transfer is denied; (f) expenses to be
> incurred by the parties if transfer is denied; (g) location of defense
> counsel; (h) relative accessibility of the place of trial; (i) docket
> conditions of each potential district; and (j) any other special
> circumstance that might bear on the desirability of transfer.

Id. (citing Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240 (1964)).  No single

factor is dispositive and the district court has wide discretion to balance the factors as

appropriate.  Id.  Moreover, in this circuit, the Court of Appeals has focused on the effect of

transfer of both parties, not just the defendant.  United States v. Stephenson, 895 F.2d 867, 875

(2d Cir. 1990) (considering the residences of government witnesses and the location of the

prosecutor and evidence in finding that the district court did not abuse its discretion in denying

transfer).

      B.    Analysis

          The Court should reject the defendant's eleventh hour attempt to transfer venue.

To meet his burden, the defendant must show "that a trial in the district where the indictment was

properly returned 'would be so unduly burdensome that fairness requires the transfer to another

district of proper venue where a trial would be less burdensome.'"  United States v. Flom, 14-

CR-507 (RRM), 2015 WL 6506628, at *2 (E.D.N.Y. Oct. 27, 2015) (quoting U.S. Steel Corp.,

233 F. Supp. at 157).  But the defendant has failed to meet the burden of justifying a transfer

from this district.  Indeed, the defendant does not even attempt to argue that fairness requires

such a transfer, and instead seeks to turn the inquiry on its head, by merely arguing that "no

meaningful prejudice would result to the government based on a decision to transfer the case." (Def. Mot. at 6).

The <u>Platt</u> factors do not come close to favoring the transfer of this case from the Eastern District of New York to the Middle District of North Carolina.

 1. <u>The Location of the Defendant.</u>

The defendant does not reside in North Carolina, rather he lives in Illinois.  (Def. Mot. at 6).  This factor plainly is neutral.

 2. <u>The Location of the Witnesses</u>

The location of the witnesses does not favor a transfer.  "To meet his burden under this factor the defendant must offer concrete examples of expected testimony and demonstrate that he is financially incapable of paying the witnesses' travel expenses."  <u>United States v. Cournoyer</u>, No. 12-CR-65 (SLT), 2012 WL 6539659, at *6 (E.D.N.Y. Dec. 14, 2012); <u>see also</u> <u>Guastella</u>, 90 F. Supp. 2d at 339 (defendants failed to provide example of testimony or why witnesses would be unable to testify in New York, and thus did not meet their burden of showing "the location of necessary and relevant witnesses compels a transfer"); <u>United States v. Spy Factory Inc.</u>, 951 F. Supp. 450, 457 (S.D.N.Y. 1997).  "[T]he defendant's burden will not be met by a bare recitation of distance."  <u>Cournoyer</u>, 2012 WL 6539659, at *6.  Here, the defendant has not met his burden.  He has not identified any witnesses that he would call that would be unavailable to travel to New York, much less specified testimony or proffered an inability to pay for travel expenses.  Instead, he has merely asserted that a transfer "would be more convenient for [unnamed] potential witnesses."  (Def. Mot. at 7).  Accordingly, the defendant has not shown that this factor requires a transfer.

12

To the extent the government intends to call witnesses such as one or more former employees or owners of Life Source Medical who reside in or near the Middle District of North Carolina, the government is not aware of any such witnesses who are unable to travel to the Eastern District of New York, and the government would arrange for certain travel expenses of those witnesses. In addition, the government anticipates calling multiple witnesses who were Medicare beneficiaries and residents of the Eastern District of New York and who received DME from Life Source. Requiring such beneficiary witnesses, all of whom are senior citizens and some of whom have mobility issues, to travel to North Carolina for relatively short testimony would be highly burdensome to them. This factor is accordingly neutral.

3. The Location of the Events Likely to Be at Issue

The events at issue in this case involve conduct in the Eastern District of New York as well as around the country, including North Carolina, and even internationally, including contacts between call centers in the Philippines and beneficiaries in this district and elsewhere. Moreover, the events that will actually be at issue, such as meetings and conversations between the defendant and co-conspirators, generally occurred in other districts, as the defendant was based in Illinois and Co-Conspirator 1 was based in South Carolina. Where, as here, the criminal scheme involved national (and even international) conduct, transfer is not appropriate. See, e.g., Guastella, 90 F. Supp. 2d at 339 ("[B]ecause the criminal activity that was alleged to have occurred in this case was national and even international in scope . . . the location of events at issue favors neither party."); United States v. Riley, 296 F.R.D. 272, 276-77 (S.D.N.Y. 2014), reconsideration denied, 2014 WL 774630 (where insider trading had a "national impact and scope . . ., the location of the events in issue weighs only slightly in favor of transfer" (internal quotation marks omitted)). This factor accordingly is neutral or favors transfer only slightly.

4.   The Location of Relevant Documents and Records

This factor favors neither party in light of modern transportation and communication.  The defendant does not identify any evidence that is only available in the Middle District of North Carolina or evidence that could not be easily brought or transmitted to New York.  Accordingly, this factor does not weigh in favor of transfer.

5.   The Potential for Disruption of the Defendant's Business if Transfer is Denied

The defendant does not argue that his business will be disrupted if the case is tried in the Eastern District of New York instead of the Middle District of North Carolina.  Thus, this factor is neutral.

6.   The Expense to the Parties if Transfer is Denied

The defendant identifies no expenses he would be required to pay if the case remains in the Eastern District of New York, or that he would be unable to pay those expenses.  See Flom, 2015 WL 6506628, at * 7.  By contrast, the government would have to pay to relocate its prosecution team, including the prosecutors and case agents, from New York to North Carolina.  Stephenson, 895 F.2d at 875 (citing location of the prosecutor as one factor in upholding the denial of a Rule 21(b) motion).  Thus, this factor favors maintaining the case in the Eastern District of New York.

7.   The Location of Defense Counsel

The location of counsel favors the Eastern District of New York.  The defendant identifies no counsel in North Carolina.  The defendant's counsel of record are based nearby in Manhattan and Boston.  Thus, this factor favors retaining the case here.

14

### 8.   The Relative Accessibility of the Place of Trial

The defendant does not argue that there is any difficulty in accessing the Eastern District of New York.  Accordingly, this factor is at most neutral.  Spy Factory, 951 F. Supp. at 460 ("The efficiency of modern air transportation renders rather sterile any argument that one forum is more accessible than the other." (internal quotation marks omitted)).

### 9.   The Docket Condition of Each District

While the Eastern District of New York undoubtedly has a busy docket, there is no reason to believe that this Court could not conduct the trial in a timely fashion.  See United States v. Wilson, No. 01-CR-53 (DLC), 2001 WL 798018, at *3 (S.D.N.Y. July 13, 2001) (this factor did not weigh in favor of transfer where "there [was] no need to transfer this case . . . in order to avoid calendar congestion").  Indeed, this Court has presided over the case for approximately three years and has been prepared to try the case since at least when it set the case for trial on March 23, 2023.  (ECF No. 52)  Transfer and reassignment to a new judge would undoubtedly cause delay, as a new judge would have to become familiar with the case and schedule a trial.  Spy Factory, 951 F. Supp. at 460 (recognizing a transfer would "inevitably necessitate a delay in the impending trial date").  Accordingly, this factor weighs in favor of maintaining the case here.

### 10. Other Special Circumstances

Any other special circumstances weigh in favor of denying the request to transfer. Most notably, the defendant's long delay in making a motion to transfer venue significantly weighs against his Motion.[4]

---

[4] The defendant also suggests that a transfer to the Middle District of North Carolina would have the benefit of avoiding a potential second trial if an appellate court determined venue

15

In change of venue cases, "[o]ne of the factors to which the Second Circuit has paid special attention is a defendant's delay in moving to transfer the case." Spy Factory, 951 F. Supp. at 461.  In Maldonado-Rivera, the Second Circuit affirmed a district court's denial of transfer where, among other things, "the transfer motion was belated, having been made some nine months after commencement of the prosecution, after discovery was nearly complete, after substantive motions had been filed, and on the eve of the court's setting a date for trial."  922 F.2d at 966.  Additionally, requiring "local counsel to familiarize themselves with the case," would also "inevitably delay the trial."[5]  And in United States v. Keuylian, 602 F.2d 1033, 1038 (2d Cir. 1979), the Second Circuit found that a district court had not abused its discretion in denying transfer where "the most important factor was appellant's delay in moving to transfer the case."  In that case, the defendant waited four months to file the motion and did not file until shortly before trial was scheduled.  Id. at 1038; see also Riley, 296 F.R.D at 278 (finding that "[d]efendants' delay in filing their Rule 21 motion weigh[ed] heavily against transfer" where there was nine month delay in motion to transfer venue); United States v. Carey, 152 F. Supp. 2d 415, 423 (S.D.N.Y. 2001) (finding that five month delay in moving for transfer weighed against motion).

Here, the defendant delayed significantly before making his motion for transfer, waiting almost three years after he was indicted, until after the Court had set a schedule for pre-trial motions and approximately two months before trial, and without any attempted justification for such a delay.  This delay weighs heavily against transfer.

---

was improper here.  (Def. Mot. at 8).  As discussed above, venue is clearly proper based on well-established precedent.

[5] The Motion does not address whether the defendant would need to obtain local counsel.

16

In sum, the majority of the factors are either neutral to transfer or favor retaining the case here.  A balance of the factors therefore weighs heavily in favor of maintaining the case before this Court, or at most results in an equipoise insufficient to overcome the defendant's burden to "show that trial here would be so unduly burdensome that fairness requires the transfer . . . ."  United States v. Estrada, 880 F. Supp. 2d 478, 486 (S.D.N.Y. 2012) (internal quotation marks omitted) (denying motion to transfer even where "a number of factors . . . weigh in favor of transfer").  The case should therefore remain in the Eastern District of New York.

CONCLUSION

For all of the foregoing reasons, the Court should deny the defendant's Motion.

Dated:      Brooklyn, New York
          August 7, 2023

                        Respectfully submitted,

                        GLENN S. LEON
                        Chief
                        Criminal Division, Fraud Section
                        U.S. Department of Justice

          By:     /s/
                        Andrew J. Estes
                        Patrick J. Campbell
                        Trial Attorneys
                        Criminal Division, Fraud Section
                        U.S. Department of Justice