

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MGD/PJC
F. #2020R00105

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 21, 2023

<u>By E-mail and ECF</u>

Maksim Nemtsev
Maksim Nemtsev, P.C.
20 Park Plaza, Suite 1000
Boston, MA 02116

> Re:     United States v. Gorgi Naumovski
>         <u>Criminal Docket No. 20-384 (WFK)</u>

Dear Mr. Nemtsev:

   Enclosed please find Lisa Small's signed expert disclosure, provided in accordance with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.  The government reserves the right to supplement and/or correct this disclosure if appropriate.  <u>See</u> Fed. R. Crim. P. 16(a)(1)(G)(vi).  The government also requests reciprocal discovery from the defendant pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure.

   In sending this notice, the government does not contend or concede that any portion of the testimony described below necessarily qualifies as expert testimony under Federal Rule of Evidence 702 or implicates the disclosure requirements of Federal Rule of Criminal Procedure 16(a)(1)(G), Federal Rule of Evidence 702, or <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 579 (1993).  Nonetheless, the government provides this notice in the event the Court concludes that any portion of Ms. Small's testimony constitutes expert testimony.  Further, the government may choose not to elicit all of the testimony outlined in this notice, but it provides this information out of an abundance of caution.

If Ms. Small is not available, the government reserves the right to call another employee or contractor of Medicare with similar qualifications and experience.  It is expected that any substitute witness would render similar opinions, and testify concerning similar topics, as Ms. Small.

This letter is intended to supplement the disclosures and discovery the government has previously provided to you.  For example, on August 11, 2023, the government provided notes of a meeting between the government and Ms. Small pertaining to the matters described below.  A copy of Ms. Small's curriculum vitae will be produced separately.

Very truly yours,

GLENN S. LEON
Chief
Criminal Division, Fraud Section
U.S. Department of Justice

By:  /s Miriam L. Glaser Dauermann
_____
Miriam L. Glaser Dauermann
Acting Assistant Chief
Patrick J. Campbell
Trial Attorney
Fraud Section, Criminal Division
(718) 254-7575

Enclosure

cc:    Clerk of the Court (WFK) (by ECF)

## Disclosure as to Expert Witness Lisa Small

**I.**     **Statement of Opinions, Bases, and Reasons**

      The following is "a complete statement of all opinions that the government will elicit from the witness in its case-in-chief, or during its rebuttal to counter testimony that the defendant has timely disclosed under [Rule 16](b)(1)(C), and the bases and reasons for them." Fed. R. Crim. P. 16(a)(1)(G)(iii).

      **Bases for Testimony:** Ms. Small's opinions are based largely upon her more than 36 years of experience working as a contractor for the Medicare Program, including her experience interpreting, applying, and ensuring compliance with applicable laws, rules, and regulations governing the payment of claims submitted to the Medicare Program. Ms. Small will help the jury understand what Medicare is, what it pays for, and the mechanics of claim processing and reimbursement.

      **Opinions and Summary of Anticipated Testimony:** The government anticipates that Ms. Small's testimony may cover the following topics:

- Information about the Medicare Program generally, including:
  - Medicare is a federally funded health care program providing benefits to people 65 years of age or older or disabled.
  - Medicare is a "Federal health care program" as defined in Title 42, United States Code, Section 1320a-7b(f) and a "health care benefit program" as defined in Title 18, United States Code, Section 24(b).
  - Medicare is divided into four parts: coverage for in-patient care (Part A), coverage for medical items and services (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D).
  - Physicians, other medical professionals, and other health care providers that provide items and services to Medicare beneficiaries are referred to as Medicare "providers" or "suppliers." To participate in Medicare, providers and suppliers are required to submit an application in which they agree to abide by the laws, policies, procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers are required to abide by the laws, regulations, and policies, governing the program, including, but not limited to, several provisions of the Social Security Act, the regulations promulgated under the Social Security Act, and applicable policies, procedures, rules, and regulations issued by the Centers for Medicare & Medicaid Services ("CMS") and its authorized agents and contractors. Medicare manuals and service bulletins describing proper billing procedures, rules, and regulations are made available to providers.
  - CMS assigns a unique identifier to each provider a number called a National Provider Identifier ("NPI"). The NPI is the standard unique health identifier for health care providers and suppliers and is assigned by the National Plan and Provider Enumeration System ("NPPES"). To enroll in Medicare, a provider must obtain an NPI and furnish it on their application prior to enrolling in Medicare or when submitting a change to their existing Medicare enrollment

information.  Applying for the NPI is a process separate from Medicare enrollment.

o   If Medicare approves a provider's enrollment application, Medicare assigns the provider a Provider Transaction Access Number ("PTAN").  A provider who is assigned a Medicare PTAN and provides items or services to beneficiaries is able to order, among other things, durable medical equipment and laboratory testing. Claims for items and services are submitted for reimbursement to the Medicare contractor based on these orders.

o   Medicare payments are often made directly to the supplier or provider who provided the item or service, rather than to the Medicare beneficiary.  Payments occur when the provider submits a claim to Medicare or a Part C plan administrator for payment, either directly or through a billing company.

o   A Medicare claim is generally required to set forth, among other things, the beneficiary's name, the date the items or services were provided, the beneficiary's diagnosis, the name of the physician or provider who ordered the items or services, and the name of the physician or provider who provided the items or services.  Providers convey this information to Medicare by submitting claims electronically using billing codes and modifiers.

o   After a claim is submitted and paid, Medicare will generate a remittance advice notice indicating what was submitted, what was processed, and what was paid by Medicare.

o   Medicare regulations require providers to maintain complete and accurate patient medical records reflecting the medical assessment and diagnoses, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the provider. Generally, providers must disclose where such records are kept and maintain them for a period of 6 years.  Medicare requires complete and accurate patient medical records so that Medicare can verify that the services were provided as described in the claim form.  These records are required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

o   Medicare pays claims if the items or services are accurately described, medically reasonable, medically necessary for the treatment or diagnosis of the patient's illness or injury, documented, and actually provided as represented to Medicare.

o   Medicare publishes guidance regarding what services it does and does not cover in a variety of publications, including National Coverage Determinations ("NCDs"), Local Coverage Determinations ("LCDs"), and CMS program manuals.

o   Medicare beneficiaries typically have the choice as to which provider will provide services or items prescribed to them.  Medicare generally prohibits a provider from directing an order or prescription to a particular company not of the patient's choosing.

o   Medicare does not pay for items or services that are procured through kickbacks and bribes.  Ms. Small will provide examples of payment arrangements which would constitute kickbacks and bribes under Medicare regulations such that Medicare would not pay for items or services procured through those payment

arrangements, including by paying another to refer orders to a particular provider or supplier.

- Medicare regulations pertaining to telehealth that pre-date the COVID-19 pandemic, including:
  - Telehealth is medical care delivered by electronic means. Medicare requires that the interaction between the patient and the doctor must be in real time (i.e., not recorded and replayed for the provider), and it must be by both audio and visual means. Telephonic contact that does not include a visual component does not constitute telehealth under Medicare regulations.
  - The patient who is receiving that care must be residing in a rural health professional shortage area.
  - The patient must be at a qualifying "originating site," which is typically a medical facility.

- Medicare coverage and reimbursement for durable medical equipment, prosthetics, orthotics, and supplies (hereinafter, "DME"), including:
  - A claim for DME generally must be based on an order or referral by a medical provider enrolled with Medicare in order for Medicare to reimburse the DME supplier for the claim.
  - An order or referral for DME must come from the beneficiary's treating provider.
  - The Social Security Act generally restricts coverage of services and items, including DME, to those that are medically reasonable and necessary "for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed member." Part 410 of Title 42 of the Code of Federal Regulations more specifically defines what services and items are medically necessary.
  - The scope and conditions of coverage for DME are contained in Title 42, Code of Federal Regulations, Section 410.38.
  - DME has period use limits. If Medicare covers a piece of DME for a beneficiary, the beneficiary generally is not eligible to get coverage/reimbursement for another piece of DME of the same or similar type within a certain time frame.
  - When ordering certain DME items, such as certain knee braces, the ordering practitioner generally must examine the patient in order for the DME to be considered reasonable and medically necessary under LCDs. For example, the LCD applicable to knee braces requires a provider to examine a patient's knee in order for a knee brace to be considered medically necessary and covered by Medicare. Prescriptions for certain knee braces also require evaluation and documentation concerning joint stability.

- Billing data at issue in this case:
  - Ms. Small may authenticate and summarize Medicare claims data.
  - Ms. Small may provide testimony regarding summary exhibits that explain billing data and billing patterns in this case.

## II.   <u>Qualifications</u>

The following is a list of "the witness's qualifications, including a list of all publications authored in the previous 10 years." Fed. R. Crim. P. 16(a)(1)(G)(iii):

**<u>Qualifications</u>:** Ms. Small is employed by SafeGuard Services LLC ("SGS"), a Unified Program Integrity Contractor that the CMS contracts with to identify and investigate suspected fraudulent activity and to protect the health care benefits for Medicare beneficiaries and Medicaid recipients in New York, among other states and territories. Ms. Small is responsible for supervising a team of investigators who review claims submitted under Medicare Parts A and B and undertake special projects as directed by CMS. Ms. Small is also responsible for presenting investigative referrals to law enforcement agencies on behalf of SGS.

**<u>Publications</u>:** Ms. Small has not authored any publications under her own name in the previous ten years. As noted above, Ms. Small regularly presents investigative referrals to law enforcement agencies.

## III.   <u>List of Cases</u>

Within the last four years Ms. Small has testified in <u>Samson Assefa v. Centers for Medicare & Medicaid Services</u>, Docket Number C-21-597, an administrative proceeding. Ms. Small has not testified in federal court within the last four years.

Ms. Small has reviewed and approved this disclosure and attests to that fact by signing below.

Very truly yours,

GLENN S. LEON
Chief
Fraud Section, Criminal Division
U.S. Department of Justice

By:    /s Miriam L. Glaser Dauermann
Miriam L. Glaser Dauermann
Acting Assistant Chief
Patrick J. Campbell
Trial Attorney
Fraud Section, Criminal Division
(718) 254-7575

I have reviewed and I approve this disclosure.

Date:  8/21/2023                    *Lisa Small*
Lisa Small
Fraud Investigations Manager
SafeGuard Services LLC

Enclosures (by e-mail only)

cc:     Clerk of the Court (WFK) (by ECF) (without enclosures)

7