MGD/PJC
F.# 2020R00105

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – X

UNITED STATES OF AMERICA

                                             Cr. No. 20-384 (WFK)

    - against -

GORGI NAUMOVSKI,

                Defendant.

– – – – – – – – – – – – – – – – X

## THE GOVERNMENT'S FIRST MOTIONS IN LIMINE

The United States of America, by and through its undersigned attorneys, submits its first motions in limine seeking orders: (i) precluding testimony and evidence related to the potential consequences of conviction; (ii) precluding testimony and evidence related to certain aspects of the defendant's personal life, including his lack of a criminal record; (iii) precluding testimony, evidence and argument regarding the government's charging decisions; (iv) precluding testimony and evidence regarding what the defendant's co-conspirators told their other business partners about the legality of their durable medical equipment ("DME") businesses; (v) precluding testimony and argument regarding certain legal opinion letters provided to co-conspirator Andrew Chmiel; (vi) precluding testimony and argument that the rules regarding the provision of telehealth services changed after the period charged in the indictment; (vii) finding that the proposed testimony of Lisa Small is not expert testimony; and (viii) admitting certain evidence of the defendant's prior DME business experience as direct evidence of the crime or, as an alternative, pursuant to Rule 404(b).

1

BACKGROUND

From approximately April 2016 to December 2018, the defendant and his co-conspirators, including Andrew Chmiel and Herb Kimble, used Life Source Medical, a durable medical equipment ("DME") company, to submit false and fraudulent claims to Medicare for expensive DME, including back and knee braces, that were not eligible for reimbursement because, among other reasons, the claims were procured through bribes and kickbacks and were not medically necessary.

The scheme involved, among other things, the following: (1) Medicare beneficiaries in the Eastern District of New York and elsewhere in the United States spoke with telemarketers on the phone, and the telemarketers connected the beneficiaries with doctors by phone to prescribe expensive braces; (2) despite not having conducted valid medical examinations, the doctors signed prescriptions for DME as well as DME order forms and other documentation (collectively, "Doctors' Orders") needed to submit claims to Medicare for supplying DME; (3) the defendant, together with others, paid bribes and kickbacks to the telemarketers to purchase these Doctors' Orders through bank accounts controlled by the defendant; (4) the defendant, together with others, caused the DME to be shipped to beneficiaries at their homes within the Eastern District of New York and elsewhere, and employees called the beneficiaries to confirm that they received the DME; (5) through his company, Life Source Medical, the defendant submitted or caused the submission of approximately $4 million in claims to Medicare for providing DME to beneficiaries, including for beneficiaries who resided in and

received the DME in the Eastern District of New York; and (6) Medicare paid Life Source Medical approximately $1.4 million in fraudulent Medicare claims.[1]

On September 18, 2020, a grand jury in the Eastern District of New York returned a one-count indictment (the "Indictment") against the defendant charging him with conspiracy to commit health care fraud.  (ECF No. 1.)

On August 22, 2023, the defendant moved to compel the production of interview reports related to individuals to whom his co-conspirators potentially "disclosed legal opinion letters or otherwise provided assurances that the business model was lawful and/or that attorneys had reviewed the business model."  (See ECF No. 71-1 (the "Motion to Compel").)  On August 27, 2023, the government requested that the defendant produce all documents related to legal advice the defendant received from any attorney regarding Life Source Medical's business model.  (See ECF No. 77.)  In response, the defendant stated that he "does not intend to assert the advice of counsel defense and does not intend a good faith defense predicated on advice made to him by any attorney."  Exhibit A.  The Court denied the Motion to Compel on August 31, 2023.  Trial is scheduled to commence on September 11, 2023.

## I.    The Court Should Preclude Testimony and Evidence Regarding the Consequences of Conviction

The Court should preclude the defendant from presenting evidence or argument, including during jury addresses and through questioning during direct and cross-examinations,

---

[1] The factual background set forth herein is merely a summary of relevant facts. The government has not endeavored to set forth all facts that it expects to prove at trial, including through witness testimony and documentary and other evidence, and does not intend this to be a full proffer of evidence.

pertaining to the potential consequences that the defendant may face if he is convicted, including the loss of any business licenses or negative immigration consequences.

The Court should preclude evidence regarding possible consequences the defendant may face if convicted because it is irrelevant and thus inadmissible.  See Fed. R. Evid. 401.  The defendant's punishment is not a fact of consequence to be determined at trial.  United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences.").  Therefore, any evidence of potential consequences of punishment is not relevant.  See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").  Indeed, jurors are routinely instructed not to consider a defendant's potential punishment in determining guilt.  See generally Sand et al., Modern Federal Jury Instructions, Instruction 9-1; see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)); United States v. Bracy, No. 20-CR-483 (ARR), 2022 WL 17801133, at *7 (E.D.N.Y. Dec. 19, 2022) (noting that the court intended "to instruct the jury [consistent with Shannon] and will also preclude evidence or argument as to possible punishment or collateral consequences").

Evidence of the consequences of a conviction is not only irrelevant, but any hypothetical probative value would be substantially outweighed by the danger of unfair prejudice, confusing the issues before the jury and undue delay.  See Fed. R. Evid. 403.  Such evidence "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion."  Shannon, 512 U.S. at 579; see, e.g., United States v. Goffer, 721 F.3d 113, 129 (2d Cir. 2013) (no abuse of discretion in

4

excluding evidence that "would require the 'collateral consequences' of a conviction to be discussed at length, requiring an already complex trial to gain additional and unnecessary dimensions"). Accordingly, the Court should preclude such argument and testimony.

## II.     Certain Details Regarding the Defendant's Background and Personal Life are Inadmissible

The government submits that the Court should preclude the defendant from eliciting evidence about his background that is improperly offered to prove the defendant's good character or intended to engender sympathy or bias. As a result, the defendant should be precluded from arguing or introducing evidence, through witness testimony or otherwise, that the defendant does not have a criminal record. Similarly, the defendant should be precluded from arguing or introducing irrelevant or prejudicial evidence about the defendant's family background or relationships.

With respect to argument or evidence regarding the defendant's lack of a criminal history, the Federal Rules of Evidence ordinarily prohibit witnesses from proving good character through specific instances of conduct. See Fed. R. Evid. 405(a). The Second Circuit has concluded, however, that evidence of a lack of prior convictions or arrests is admissible for the purpose of gauging the credibility of a testifying witness. See United States v. Blackwell, 853 F.2d 86, 88 (2d Cir. 1988) (noting the "relatively low probative value" of this evidence). Thus, such evidence becomes relevant and admissible if—and only if—the defendant testifies, and even then, only for the limited purpose of providing background information relating to his credibility as a witness.

As a result, consistent with Blackwell, the government requests that the defendant be precluded from informing the jury of his lack of criminal history, unless and until he chooses to testify. Defense counsel should not be permitted to advise the jury of the defendant's lack of

criminal history in opening statements or through cross-examination.  Counsel also should not be able to use the absence of a prior criminal record, or any other evidence of specific instances of conduct, to prove good character, or to show lack of intent or motive.  To allow otherwise would confuse the issues under consideration, in violation of Federal Rule of Evidence 403, and violate Rule 405(b)'s restrictions against proving good character through specific instances of conduct.

Similarly, details about the defendant's family, his relationship status and his background have no bearing on the issues in this case because they are not probative of whether the defendant committed the crime charged in this case.  Such evidence has limited probative value and is primarily designed to engender undue sympathy and bias the jury, which is improper. See United States v. Miller, 641 F. Supp. 2d 161, 167 (E.D.N.Y. 2009) ("District courts have broad discretion to balance the probative value of evidence against possible undue sympathy or bias as well as prejudice.").  Courts have broad discretion to exclude evidence if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one . . . ."  Fed. R. Evid. 403, Adv. Comm. Notes.  Indeed, when evidence is of limited probative value, it should be excluded if it has the "potential to engender sympathy in an inappropriate effort to excuse defendant's commission of the charged offenses."  Miller, 641 F. Supp. 2d at 167; see also United States v. Paccione, 949 F.2d 1183, 1201 (2d Cir. 1991) (affirming preclusion of evidence that defendant had son with cerebral palsy); United States v. Battaglia, No. S9 05 Cr. 774 (KMW), 2008 WL 144826, at *3 (S.D.N.Y. Jan. 15, 2008) (precluding "evidence of Defendant's family and personal status" as not "relevant to the issue of whether Defendant committed the crimes charged").

In this case, the clear purpose for introducing at trial irrelevant evidence of the defendant's background, family, or relationship status would be to elicit sympathy for the

6

defendant or distract from the facts at issue.  But these extraneous details do not make it more or

less likely that he conspired to commit health care fraud.  See Fed. R. Evid. 401.  Moreover, the

risk of juror confusion and unfair prejudice is manifest because the jury would be asked to make

their decision based on facts not pertaining to the defendant's conduct in this case.  This sort of

emotional appeal to the jury's sympathy should be excluded under Rule 403.

**III.    The Government's Charging Decisions Are Not Relevant to the Defendant's Guilt**

The Court should also preclude the defendant from eliciting testimony or

introducing evidence regarding the government's charging decisions with respect to anyone not

on trial.  Any statements as to whether any other person not charged in the Indictment has been or

will be charged with a crime, including but not limited to the doctors who wrote the orders that

were sold to the defendant, is not relevant to the guilt of the defendant and should be precluded.

See United States v. Ramsey, No. 21-CR-495 (ARR), 2023 WL 2523193, at *6 (E.D.N.Y. Mar.

15, 2023); United States v. Hill, No. 12-CR-214 (KAM), 2014 WL 198813, at *2 (E.D.N.Y. Jan.

14, 2014); United States v. Borrero, No. 13-CR-58 (KBF), 2013 WL 6020773, at *2 (S.D.N.Y.

Nov. 1, 2013); see also United States v. Thompson, 253 F.3d 700 (5th Cir. 2001) (upholding grant

of government's motion in limine to prevent defense counsel from comparing defendant's

conduct with that of other uncharged or immunized witnesses).  Any statements to that effect are

only meant to prejudice the jury; therefore, the statements offer no probative value and should be

excluded.  Fed. R. Evid. 403.

As set forth in the government's Requests to Charge (ECF No. 82, at 14), the

government will also ask the Court to instruct the jury that they are only to consider the crimes

charged and that they are not "called upon to return a verdict as to the guilt of any other person or

persons."  Assuming the Court will give this standard instruction, permitting argument by defense

counsel in the form of drawing comparisons with uncharged individuals would be inconsistent with that charge and tantamount to a request for jury nullification. The Court should therefore preclude evidence or testimony regarding the status of any co-conspirators who are not on trial.

IV. **The Court Should Preclude Testimony Regarding What Co-Conspirators Told Individuals Other Than the Defendant About the Legality of Their DME Business Model**

Evidence regarding what Messrs. Chmiel and Kimble told individuals <u>other than the defendant</u> about the legality of their DME business model is irrelevant to the issues before the jury and likely to cause confusion and delay. The Court should preclude all such testimony and evidence.

Pursuant to Rule 401 of the Federal Rules of Evidence, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Generally, relevant evidence is admissible and "[i]rrelevant evidence is not admissible." <u>See</u> Fed. R. Evid. 402. "[T]he district court has broad discretion to exclude evidence that is irrelevant . . . ." <u>United States v. Edwards</u>, 631 F.2d 1049, 1051 (2d Cir. 1980). Pursuant to Rule 403 of the Federal Rules of Evidence, the Court may also exclude evidence that is likely to confuse the jury or tends to waste time. <u>See</u> Fed. R. Evid. 403; <u>United States v. Amato</u>, 2006 WL 1495497, at *5 (E.D.N.Y. May 26, 2006) (noting the court has "broad discretion" to exclude evidence that creates danger of "'confusion of the issues, misleading the jury, or . . . wast[ing] [ ] time'").

The defendant has made clear that one theme he will explore at trial is that Mr. Chmiel "lure[d] clients and business partners to engage in his schemes by assuring them the

conduct was legal." (See Motion to Compel at 6.[2])  Indeed, the defendant has sought additional

discovery to determine whether Mr. Chmiel made any representations regarding the legality of the

DME business to anyone other than the defendant.  (Id. at 1 (requesting reports discussing to

"whom Mr. Chmiel . . . disclosed legal opinion letters . . . ").)[3]  Importantly, the defendant is the

only one of Mr. Chmiel's business partners who is on trial here.  Whether Mr. Chmiel represented

to anyone else that Mr. Chmiel's conduct was legal is irrelevant to the defendant's state of mind

and his guilt.

      First, representations about the legality of Mr. Chmiel's business that were not

made to the defendant are irrelevant, as it does not make any fact of consequence more or less

probable and would only tend to prove the state of mind of Mr. Chmiel's other business partners.

See, e.g., Cole Sys. Assocs., Inc. v. Mun. Emerg. Svcs., Inc., No. 08-CV-6417, 2010 WL

4942229, at *2 (S.D.N.Y. Dec. 3, 2010) (granting motion to preclude testimony that "concerns an

unrelated project that will shed little, if any, light on the performance of the contract at issue");

United States v. Hunt, 534 F. Supp. 3d 233, 262 (E.D.N.Y. 2021) (quoting Fed. R. Evid. 401)

(precluding cross-examination that "would not tend to make a fact of consequence in determining

this action 'more or less probable'").

      Second, admitting testimony and evidence regarding representations about the

legality of Mr. Chmiel's business that were not made to the defendant will confuse the jury.  To

the extent that the defendant intends to argue that Mr. Chmiel led him to believe that his business

was legal, permitting the defendant to inquire as to what Mr. Chmiel represented to others besides

---

[2] The Court denied the defendant's motion on August 31, 2022.

[3] Although the government does not concede the relevance or discoverable nature
of the requested interview reports, the government searched its records and provided responsive
documents three days after the defendant requested them.

9

the defendant will confuse the jury about whose state of mind is relevant at trial.  Simply put, evidence of representations made to others has to do only with those others' state of mind and is not relevant to the key question in this case:  the state of mind of the defendant himself.  Such evidence is therefore confusing and should be precluded.  See, e.g., United States v. Chastain, No. 22-CR-203, 2023 WL 2966643, at *9 (S.D.N.Y. Apr. 17, 2023) (excluding as confusing testimony that had "limited or no bearing on the issues"); Brutus v. Silverseal Corp., No. 06-CV-15298, 2010 WL 3155167, at *2 (S.D.N.Y. July 30, 2010) (precluding testimony by fact witnesses that lacked "personal knowledge of any disputed facts" and would "waste time and be likely to confuse the jury"); United States v. Garnes, No. 22-CR-487, 2023 WL 4489983, at *7 (E.D.N.Y. July 12, 2023) (excluding defendant statements that risked "confusing the issues to be tried in this case and misleading the jurors").

Third, the suggestion that Mr. Chmiel "lured" other co-conspirators into believing that his conduct was legal, see Motion to Compel at 6, would be misleading.  To the contrary, multiple co-conspirators have informed the government that they did not believe Mr. Chmiel's statements regarding the business model's purported legality.  For example, one co-conspirator recounted to the government a meeting at which Mr. Chmiel purportedly "stated his attorneys indicated the business structure [of paying Chronos and Pantheon for leads and the use of telehealth] was acceptable."  Another co-conspirator responded that "the attorneys will tell you anything you want to hear, as long as they are getting paid."  The co-conspirators then closed the DME company that they had opened with Mr. Chmiel because they were uncomfortable with the legality of the business model.  The defendant should be precluded from arguing generally that Mr. Chmiel fooled others into the conspiracy, as that argument is simply not true and would devolve the trial into a series of mini-trials about other individuals.

Finally, permitting the defendant to elicit testimony and evidence related to representations that were not made to the defendant will waste time and cause delay.  Permitting the defendant to question Mr. Chmiel about representations he made to other business partners, or allowing the defendant to introduce testimony from those other business partners about what representations Mr. Chmiel made to them about the legality of his business, will devolve into a series of mini trials about representations made to non-parties in irrelevant business relationships. The Court should not permit the defendant to waste the jury's time exploring these irrelevant issues.  See Fed. R. Evid. 403; Brutus, 2010 WL 3155167, at *1 (excluding testimony and holding that "allowing [p]laintiff's proffered witnesses [who lack personal knowledge] to testify would waste time").

Accordingly, the Court should preclude testimony and evidence regarding what Mr. Chmiel told his other business partners about the legality of his businesses.

**V.    The Court Should Exclude the Opinion Letters and Any Testimony Regarding Them**

As noted above, the defendant previously moved to compel the production of interview reports related to certain law firm opinion letters (the "Letters") and identified the Letters as important evidence.  (See Motion to Compel at 2.)  Accordingly, the government expects that the defendant may attempt to introduce the Letters into evidence at trial to argue that the defendant relied on legal advice (albeit apparently derivative advice from Mr. Chmiel's lawyers) in conducting business at Life Source Medical.  On August 27, 2023, the government requested that the defendant produce all documents related to advice the defendant received from any attorney regarding Life Source Medical.  (See ECF No. 77.)  As noted above, the defendant responded by stating that he did not intend to assert an advice of counsel or good faith defense based upon advice given by any attorney.  Exhibit A at 1.  The defendant instead states his intent

11

is to claim he relied on "statements . . . that were made to him by Mr. Chmiel." Id.  Accordingly, the Court should preclude the admission of the law firm letters and any testimony regarding them for several reasons.

First, in disclaiming an advice of counsel or a good faith defense as to opinions provided by "any attorney," the defendant has disclaimed any reliance on the Letters – both legal opinions, albeit not formal legal advice[4] – and thus rendered them irrelevant and inadmissible under Federal Rule of Evidence 401.  The defendant should therefore be precluded from introducing the Letters.  Additionally, the defendant should be precluded from cross-examining Mr. Chmiel regarding the Letters, as cross-examination as to an irrelevant document not in evidence would be highly confusing to the jury.

Second, to the extent the defendant wishes to admit the Letters and statements within them for the truth of the matter asserted therein, they are inadmissible as hearsay.  United States v. Grecco, 728 Fed. App'x 32, 35 (2d Cir. 2018) (quoting Fed. R. Evid. 801(c)).  "Hearsay is an out of court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'"  Id.  "Hearsay statements are generally inadmissible unless an exception to their prohibition applies."  Id. (citing Fed. R. Evid. 802).  There are no applicable exceptions to the hearsay rule that apply to the Letters.  See Fed. R. Evid. 803.

Third, to the extent that the Letters are offered for their truth, they contain legal conclusions that usurp the Court's role in instructing the jury on the law.  The Second Circuit has

---

[4] The Letters include a disclaimer that "[t]his memorandum may not be relied upon as advice to any individual or entity."  (Exhibit A to Government's Response to Motion to Compel, ECF No. 73, at 1.)  However, as the defendant asserts in his Motion to Compel that "Mr. Chmiel obtained legal opinion letters from King & Spalding for $50,000 to support his business practices and . . . used those opinion letters to assure clients and business partners, like Mr. Naumovski and others, about the legality of his business practices" (Motion to Compel at 5), reliance upon the Letters' formal disclaimer would place upon it more weight than it can bear.

repeatedly affirmed that evidence and testimony regarding principles of law is generally prohibited.  See, e.g., United States v. Stewart, 433 F.3d 273, 311 (2d Cir. 2006) ("Clearly, an opinion that purports to explain the law to the jury trespasses on the trial judge's exclusive territory."); United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991) ("As a general rule an expert's testimony on issues of law is inadmissible."); United States v. Scop, 846 F.2d 135, 140 (2d Cir.) ("It is not for witnesses to instruct the jury as to applicable principles of law, but for the judge."), on reh'g, 856 F.2d 5 (2d Cir. 1988).  Accord United States v. Caputo, 517 F.3d 935, 942 (7th Cir. 2008) ("The only legal expert in a federal courtroom is the judge.").

The Letters contain a non-testifying lawyer's overview of applicable legal issues—without providing legal advice on any particular arrangement—regarding telehealth and marketing services for DME, both of which are at issue in this case.  Furthermore, the lawyers were not provided all material facts about the arrangements, much less any facts about the defendant's or Life Source Medical's specific conduct.  Instructing the jury on the law is solely within the province of the Court.  Admitting the Letters would raise the substantial danger of confusing the issues before the jury and misleading them into thinking that the defendant is not guilty based on the legal analysis and conclusions in the Letters, which would be a wholly improper result.  See Bilzerian, 926 F.2d at 1295 (affirming exclusion of expert testimony because it "related directly to the issue of whether [the defendant's] actual 13D disclosures complied with the legal requirements").

Fourth, even if a non-hearsay basis for their admission is offered, that is not sufficient to protect against the potential prejudice that would result from admitting the Letters for limited purposes.  As the Second Circuit has recognized, "'the mere identification of a relevant non-hearsay use of such evidence is insufficient to justify its admission if the jury is likely to

13

consider the statement for the truth of what was stated with significant resultant prejudice.'"
Grecco, 728 Fed. App'x at 35 (quoting United States v. Reyes, 18 F.3d 65, 70 (2d Cir. 1994)).

Here, it is substantially likely that even if the Letters are admitted for a limited non-hearsay purpose the jury will consider them for their truth given that they (i) are lengthy documents containing references to statutes and regulations, (ii) were written by a prominent law firm, and (iii) pertain to a business entity which the defendant used to carry out his scheme at Life Source Medical and will be the subject of other testimony.  The risk of prejudice is heightened by the fact that the Letters expressly state that they do not contain legal advice, which is only likely to confuse jurors as to how to interpret these documents and assess the defendant's state of mind. This is precisely the type of prejudice that the Second Circuit warned against in Grecco, and the Court should exclude the opinion letters even if they are offered for non-hearsay purposes.  See Grecco, 728 Fed. App'x at 35-36 (finding no abuse of discretion in excluding hearsay confession that "was likely to prejudice the jury"); see also Reyes, 18 F.3d at 72-73 (finding error in admitting hearsay that had "determinative significance for the only important issue in the trial" where "limiting instructions given by the court were unlikely to prevent the jury from considering the declarations for their truth").

**VI. The Court Should Preclude Testimony Regarding Irrelevant Changes to Telehealth Rules**

   A.   The Telehealth Rules and Regulations

The relevant time period for the conspiracy charged in the Indictment was in or about April 2016 to in or about December 2018.  (See Ind. at 4.)  At trial, the government will introduce evidence that the Doctors' Orders that the defendant procured in exchange for kickbacks and bribes were oftentimes medically unnecessary and ordered in the absence of a pre-existing doctor-patient relationship, without a physical examination and with either no interaction

14

with a provider or solely a short telephone conversation.  To prove the defendant's knowledge and intent, the government will elicit testimony and introduce exhibits explaining Medicare's rules and regulations regarding DME and telemedicine.  Specifically, during the time period alleged in the Indictment, Medicare Part B covered expenses for telehealth services only if certain requirements were met, including that the services were delivered via an interactive audio and video telecommunications system, that the beneficiary lived in a rural area and that the beneficiary was not at home during the telehealth consultation.  See, e.g., 42 C.F.R. 410.78; Centers for Medicare & Medicaid Services, Medicare Claims Processing Manual, Publication 100-04, Ch. 12, Section 190.

On January 31, 2020, the Secretary of the Department of Health and Human Services declared that, in light of confirmed cases of the 2019 Novel Coronavirus ("COVID-19"), a public health emergency existed nationwide.[5]  On March 6, 2020, the Coronavirus Preparedness and Response Supplemental Appropriations Act was signed into law.  H.R. 6074, Pub. L. 116-123.  Among other directives, the Act allowed the Centers for Medicare and Medicaid Services ("CMS") to temporarily waive certain Medicare restrictions and requirements regarding telehealth services during the coronavirus public health emergency.[6]  Effective for services starting March 6, 2020, and for the duration of the COVID-19 public health emergency, "Medicare [made]

---

[5] See U.S. Dep't Health & Human Services, Public Health Emergency, Determination that a Public Health Emergency Exists, https://www.phe.gov/emergency/news/healthactions/phe/Pages/2019-nCoV.aspx (last visited August 31, 2023).

[6] This motion in limine contains a non-exhaustive list of some of the policies and guidance issued by CMS granting providers flexibility in treating patients using telehealth and telemedicine during the COVID-19 public emergency.  This motion is intended to cover all changes to policies and guidance due to the COVID-19 public emergency, all of which post-date the charged conduct.

payment for Medicare telehealth services furnished to patients in broader circumstances.  These visits [were] considered the same as in-person visits and [were] paid at the same rate as regular, in-person visits."[7]  Specifically, Medicare paid for office, hospital or other visits furnished via telehealth, "including in [a] patient's place of residence."[8]

      B.    <u>Subsequent Changes to Telemedicine Rules and Regulations Should be Excluded Because they are Irrelevant</u>

Evidence or argument about any subsequent exceptions, waivers, or changes to Medicare rules and regulations related to telemedicine during the COVID-19 public emergency should be precluded as it is irrelevant to the offense charged in the Indictment.  The Medicare policies and guidance regarding telehealth that were issued in response to the COVID-19 pandemic were not in effect, or even contemplated, during the period of the charged offense in the Indictment.

Here, the changes to Medicare rules and regulations have no bearing with respect to the defendant's guilt or innocence as to the charge in the Indictment.  The criminal conduct alleged in the Indictment ceased well over two years before the onset of the COVID-19 pandemic and the changes to Medicare's rules and regulations regarding the use of telemedicine.  The defendant cannot show that he relied on any of the provisions in these policies and guidance because the offense conduct alleged in the Indictment occurred prior to the public health emergency.

---

[7] Centers for Medicare & Medicaid Services (CMS), Medicare Telemedicine Health Care Provider Fact Sheet (Mar. 17, 2020), https://www.cms.gov/newsroom/fact-sheets/medicare-telemedicine-health-care-provider-fact-sheet (last visited August 31, 2023).

[8] <u>Id.</u>

C.   <u>Subsequent Changes to Telemedicine Rules and Regulations Should be Excluded Under Rule 403</u>

Furthermore, any argument or mention of any subsequently changed rules or regulations should be excluded under Rule 403 of the Federal Rules of Evidence because its probative value is substantially outweighed by a danger of unfair prejudice and it would confuse the issues, mislead the jury and waste time.  <u>See</u> Fed. R. Evid. 403.

Reference to any COVID-19 changes to Medicare rules and regulations would be unfairly prejudicial to the government because it invites jury nullification.  Rather than focusing on whether a violation of criminal law occurred based on the law at the time of the alleged conspiracy, the jury may improperly decline to convict because they determine that the law at the time of the conspiracy should not be applied in light of the new rules and regulations.  Said another way, the jury may acquit because they disagree with the law during the conspiracy period or improperly focus on what the law should have been, instead of applying the law at the time.  <u>See</u> Fed. R. Evid. 403 Advisory Committee's Note ("unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one").

Similarly, reference to any changes in telemedicine rules and regulations during the COVID-19 public emergency could waste time, confuse the issues and mislead the jury about what law they should apply.  It would present two versions of the law: the one that was in force at the time and one that was not in place until two years later.  The Court should exclude testimony and argument regarding inapplicable rules and regulations.

17

### VII.  The Court Should Find that the Proposed Testimony of Lisa Small is Not Expert Testimony

The Court should find that the proposed testimony of Lisa Small, a representative of SafeGuard Services LLC, a Medicare contractor, is not expert testimony under Rule 702 of the Federal Rules of Evidence.

On August 21, 2023, the government provided notice to the defendant that it intends to call Ms. Small to provide fact testimony regarding aspects of the Medicare program that are relevant to Life Source Medical's DME business.  (ECF No. 78.)[9]  Based on communications with defense counsel and the defendant's motion to preclude Ms. Small's testimony (ECF No. 79), the government understands that the defendant contends that Ms. Small's testimony is that of an expert that falls under Rule 702.  The government disagrees and respectfully requests that the Court rule on this issue ahead of trial to streamline the presentation of evidence.

As set forth in the government's disclosure, Ms. Small is expected to testify that, among other things, (i) Medicare is a federally funded health care program, (ii) Medicare is divided into parts, including Part B, which covers "medical items" such as DME, (iii) providers who participate in Medicare must enroll, and in doing so, they agree to follow certain rules, (iv) the Centers for Medicare and Medicaid Services issues rules related to the Medicare program, (v) Medicare payments are made to providers based on claims submitted, (vi) Medicare pays for services that are medically necessary and actually provided, (vii) Medicare does not pay for items or services procured through kickbacks and bribes, (viii) Medicare had rules regarding telehealth during the charged period and prior to the COVID-19 pandemic, and (ix) Medicare coverage for

---

[9] Out of an abundance of caution, the government disclosed Ms. Small's testimony in accordance with Rule 16(a)(1)(G) of the Federal Rules of Criminal Procedure.

DME has certain requirements.  (ECF No. 78.)  This proposed testimony is clearly fact-based and not expert opinion testimony.

Judge Irizarry's decision in United States v. Ahmed, No. 14-CR-277, 2016 WL 3647686 (E.D.N.Y. July 1, 2016), is instructive.  In Ahmed, the government moved in limine to admit testimony from National Government Services ("NGS"), a Medicare contractor, regarding "the process for paying Medicare claims and the policies that determine which claims Medicare will reimburse, and at what rates."  Id. at *12 (internal quotation marks omitted).  Judge Irizarry held that the "witness's testimony was not 'based on scientific, technical, or other specialized knowledge within the scope of Rule 702,' see Fed. R. Evid. 701, but rather is fact testimony from an agent of the institution that was charged with processing the claims the government alleges were false."  Id.  Since the testimony was "relevant and would be helpful to the jury in determining facts at issue in [the] case," and did not constitute expert testimony, the court denied a motion to preclude the testimony of the NGS witness as expert testimony.  Other courts in this circuit have taken a similar approach and deemed this non-expert testimony.  Trial Transcript at 49-118, United States v. Bendelstein, 18-CR-309 (HG) (E.D.N.Y. June 29, 2022) (permitting Medicare contractor non-expert testimony absent objection).  Here, the Court should similarly rule that Ms. Small's testimony is not expert testimony.

**VIII. The Court Should Admit Evidence of the Defendant's Prior Ownership of a DME Company**

The Court should also admit evidence of the defendant's prior ownership interest in and work at the DME company Freedom Medical Direct as direct evidence of the crime charged because it provides the context and background between the defendant and his co-conspirators, or, in the alternative, pursuant to Rule 404(b) as probative of defendant's motive, intent, plan, knowledge, opportunity and lack of mistake or accident.  On August 14, 2023, the

government provided notice pursuant to Rule 404(b) of the Federal Rules of Evidence that it intended to introduce evidence that the defendant owned Freedom Medical Direct with Mr. Chmiel prior to owning Life Source Medical.  (See ECF No. 64.)   The government anticipates that Mr. Chmiel will testify, among other things, that: (1) Freedom Medical Direct purchased completed Doctors' Orders from Mr. Chmiel's companies and (2) patient "leads" were a focus of auditors investigating Freedom Medical Direct.

A.    Legal Standard

As the Second Circuit has repeatedly held, "evidence of uncharged criminal activity is not considered other crimes evidence under Federal Rule of Evidence 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial."  United States v. Carboni, 204 F.3d 39, 44 (2d Cir. 2000); see also United States v. Quinones, 511 F.3d 289, 309 (2d Cir. 2007) ("[U]ncharged crime evidence . . . necessary to complete the story of the crime on trial is appropriately treated as part of the very act charged, or, at least, proof of that act."); United States v. Inserra, 34 F.3d 83, 89 (2d Cir. 1994) ("[E]vidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense."). "The rationale underlying this principal is that, in certain circumstances, uncharged criminal activity and the charged offense are so closely intertwined that they reasonably cannot be disentangled, for example, where precluding evidence of other bad acts would leave a chronological or conceptual void in the story of the crime."  United States v. Roberts-Rahim, No. 15-CR-243 (DLI), 2015 WL 6438674, at *2 (E.D.N.Y. Oct. 22, 2015).  "To be admissible on this ground, the evidence need not directly establish an element of a charged crime as long as it

20

provides background for the events charged in the [i]ndictment." United States v. Tarantino, No. 08-CR-655 (JS), 2011 WL 1113504, at *2 (E.D.N.Y. Mar. 23, 2011).  Instead, to be relevant, "evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." United States v. Gonzalez, 110 F.3d 936, 942 (2d Cir. 1997).

Pursuant to Federal Rule of Evidence 404(b), evidence of other crimes, wrongs and acts—while not admissible to prove propensity to commit crime—is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b).  The Second Circuit evaluates Rule 404(b) evidence under an "inclusionary approach," which "allows such evidence to be admitted for any purpose other than to demonstrate criminal propensity." United States v. LaFlam, 369 F.3d 153, 156 (2d Cir. 2004); see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) (Rule 404(b) sets forth only a "non-exhaustive list of purposes for which other act or crime evidence may be admitted").

B.    Discussion

The defendant's prior work at Freedom Direct Medical is inextricably intertwined with the charged conduct and completes the story of the crime because it provides context for the nature of his relationship with Mr. Chmiel and his experience in the health care industry.  It should therefore be admitted independently of Rule 404(b).  However, the evidence is also admissible pursuant to Rule 404(b) for the non-propensity purpose of establishing motive, intent, plan, knowledge, opportunity and lack of mistake or accident.

The government anticipates that the defendant will argue at trial that he lacked experience in the DME industry and was unaware that Life Source Medical was buying completed Doctors' Orders.  His prior experience at Freedom Medical Direct—where he also

worked with Mr. Chmiel selling DME products at a company that was buying completed Doctors' Orders—is directly relevant to the issues at trial. It establishes background and context of the defendant's business relationship with Mr. Chmiel and completes the story. In <u>United States v. Skowronski</u>, the Second Circuit made clear that "[t]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events involved in the case." 968 F.2d 242, 246 (2d Cir. 1992) ("Background evidence may be admitted . . . to furnish an explanation of the understanding or intent with which acts were performed or the meanings of conversations."). Moreover, it has repeatedly been held that uncharged acts are admissible as direct evidence if they are inextricably intertwined with the charged criminal conduct. <u>See, e.g.</u>, <u>United States v. Rigas</u>, 490 F.3d 208, 238 (2d Cir. 2007) (evidence that is "inextricably intertwined with the evidence regarding the charged offense, or [that is] necessary to complete the story of the crime on trial" is not prior bad acts evidence that must be analyzed under Rule 404(b)).

Alternatively, the testimony regarding Freedom Medical Direct is being offered for the non-propensity purpose of demonstrating a common plan or scheme, intent and lack of mistake or accident, which Rule 404(b) plainly permits. Fed. R. Evid. 404(b). Here, the evidence shows that the defendant had a common plan or scheme at Freedom Medical Direct and Life Source Medical: defraud Medicare through the purchase of completed Doctors' Orders. The Court should admit this evidence for that purpose. <u>See United States v. Kuo Chen</u>, No. 10-CR-671, 2011 WL 337948, at *4 (E.D.N.Y. Jan. 21, 2011) (admitting prior acts evidence that showed the "existence of a common plan or scheme"). The fact that the defendant engaged in essentially the same conduct during two different periods also shows plan, intent and lack of mistake. <u>See United States v. Hatfield</u>, 685 F. Supp. 2d 230, 327 (E.D.N.Y. 2010) (in insider trading case,

admitting under Rule 404(b) evidence that defendant had previously directed family members to trade on non-public information as evidence of "plan, intent and/or lack of mistake").

Finally, whether admissible as direct evidence or under Rule 404(b), the significant probative value of this evidence far outweighs any potential for unfair prejudice, and the evidence should not be excluded pursuant to Federal Rule of Evidence 403.  It is well established that where evidence of other conduct offered at trial is not more serious than the charged conduct, the evidence is not unduly prejudicial.  See, e.g., United States v. Williams, 205 F.3d 23, 34 (2d Cir. 2000) ("[W]e find no undue prejudice under Rule 403; the evidence did not involve conduct more serious than the charged crime and the district court gave a proper limiting instruction.").  In this case, the probative value of this evidence is clear; it proves, among other things, the defendant's relationship with Mr. Chmiel, his prior experience in the DME industry, and his history of buying completed Doctors' Orders.  The conduct is the same as that which is charged, and therefore it is not more inflammatory than the charge the defendant faces.  United States v. Pitre, 960 F.2d 1112, 1119 (2d Cir. 1992) (internal quotation omitted).

CONCLUSION

For all these reasons, the Court should grant the government's motions in limine.

Dated:  Brooklyn, New York
         September 1, 2023

                                        Respectfully submitted,

                                        GLENN S. LEON
                                        Chief, Fraud Section
                                        Criminal Division
                                        U.S. Department of Justice

                            By:      /s Miriam L. Glaser Dauermann
                                        Miriam L. Glaser Dauermann
                                        Acting Assistant Chief
                                        Patrick J. Campbell
                                        Trial Attorney
                                        Criminal Division, Fraud Section
                                        U.S. Department of Justice

Exhibit A

# Maksim Nemtsev, P.C.

20 Park Plaza, Suite 1000
Boston, MA 02116

Phone: (617) 227-3700
Cell: (347) 251-4800
Fax: (718) 701-5922
E-Mail: max@mnpc.law

August 30, 2023

**VIA ELECTRONIC MAIL**
Miriam L. Glaser Dauermann
Acting Assistant Chief
U.S. Department of Justice
271 Cadman Plaza East
Brooklyn, NY 11201

Patrick J. Campbell
U.S. Department of Justice
271 Cadman Plaza East
Brooklyn, NY 11201

**RE:**   *United States v. Gorgi Naumovski*, **20-cr-00384-WFK**

Dear Counsel:

    I am writing in response to your August 27, 2023, demand letter. To be clear, the defense does not intend to assert the advice of counsel defense and does not intend a good faith defense predicated on advice made to him by any attorney.  Mr. Naumovski relied on statements – truthful or untruthful – that were made to him by Mr. Chmiel, thus no privilege waiver is implicated.

Sincerely,

Maksim Nemtsev