# Maksim Nemtsev, P.C.

20 Park Plaza, Suite 1000
Boston, MA 02116

Phone: (617) 227-3700
Cell: (347) 251-4800
Fax: (718) 701-5922
E-Mail: max@mnpc.law

September 14, 2023

**BY ECF**
The Honorable William F. Kuntz, II
United States District Judge
United States District Court for the
  Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

**RE:**   *United States v. Gorgi Naumovski*, **Docket No. 20 Cr. 384 (WFK)**
Motion for Mistrial or Alternatively a Curative Jury Instruction Defining the Charged Conspiracy

Dear Judge Kuntz:

The defense respectfully writes to address a significant concern as a result of the government's improper rebuttal argument that expanded the scope of the charges to encompass an omission in an 855 form that was neither charged nor noticed in the indictment nor was a basis, standing alone, of criminal liability under either the Grand Jury's indictment nor the trial proof. Specifically, during rebuttal, the government argued that:

> One of the efficient ways you can resolve this case is to look at the Medicare form 855s. **Herb Kimball was the defendant's business partner but he didn't list that on the 855. He lied to Medicare and that, ladies and gentlemen, is healthcare fraud conspiracy**. Medicare deserves to know whose receiving taxpayer dollars that are held in trust for the elderly and disabled individuals who receive Medicare services. And the defendant's signature was right there in black and white without Herb Kimball's. He certified he read that application. He certified he knew the rules but he lied. **He kept Herb Kimball off that and that's the conspiracy**. My colleague talked about how there are other ways to prove this conspiracy but that alone is enough to convict the defendant.

Tr. 693-94 (emphasis added). This argument was raised – as the sole basis of liability – during the government's rebuttal to which the defense, for obvious reasons, did not have an opportunity to respond. That newly formed basis for conspiratorial liability is not only legally in error and factually unsupported by evidence that Mr. Naumovski was aware that Mr. Kimble remained a silent partner of Mr. Chmiel in Life Source, it is inconsistent with the indictment, which charged Mr. Naumovski with engaging in a conspiracy "to execute … a scheme whereby they submitted and caused the submission of false and fraudulent claims to Medicare for DME that was (1) not medically necessary, and (2) either not provided to the Medicare beneficiary or provided based

on orders procured through bribes and kickbacks." Dkt. 1 at 2. Indeed, the indictment in this case is silent on the issue of Form 855s submissions.

Moreover, the indictment did not notice Mr. Kimble as a co-conspirator, like it did Andrew Chmiel, who is labelled unlike Mr. Kimble as co-owner CC-1, Dkt. 1 at 2. Further, there was no evidence that Mr. Kimble had any ownership interest in Life Source during the time the 855s was filed on August 1, 2016, Gov Ex. 101, and August 31, 2016, Gov. Ex. 102 and 103 – and no evidence ever that either Mr, Chmiel nor Mr. Kimble informed Mr. Naumovski that Mr. Chmiel had silently shared his 50% ownership of LSM with Mr. Kimble after Mr. Kimble's decision to not sign the 855 (a decision Mr. Naumovski could reasonably understand as foregoing an ownership interest in the company).[1]

The sole evidence that Mr. Kimble had any ownership in Life Source Medical is an unexecuted Letter of Intent from February 23, 2016 – 6 months before the 855s was filed – that states Andrew Chmiel, Herbert Kimble, Gorgi Naumovski, and Rosie Naumovski each agree to take a 25% interest in Med Motion Supply LLC in exchange for a capital contribution of $2,500. Gov. Ex. 308 at 39-40. There was no evidence that the agreement was fully executed, that Mr. Kimble transferred his $2,500 contribution, or that he received any ownership interest in Med Motion Supply LLC. Indeed, Mr. Chmiel testified that Mr. Kimble received his compensation from Life Source through Mr. Chmiel. There was no evidence that Mr. Naumovski knew that certain of Mr. Chmiel's profits (as an owner of Life Source rather than as a vendor) went to Mr. Kimble. Further reinforcing that fact is the government's forensic examination of the company's bank accounts, which did not identify any payments from or to Mr. Kimble personally from Life Source. If Mr. Kimble was not an owner of Life Source or Med Motion at the time that the 855s was filed in August of 2016, he never needed to disclose himself on the 855s Form in the first place. In short, the government's claim in rebuttal argument regarding the alleged false submission of the 855s Form is neither factually correct nor a legally permissible argument for convicting Mr. Naumovski of the charged conspiracy. To make the argument on rebuttal when the government knew that the defense would have no opportunity to rebut the facts nor, as important, to challenge the argument that a jury could convict "alone" on the omission of Mr. Kimbel from the 855s is nothing short of an ambush that should not be tolerated. Worse, nothing in the defense argument either opened the door or required or legitimized as "rebuttal" the argument quoted above.

I.      ARGUMENT

It is blackletter law that "[a] court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960). A constructive amendment takes place when the government broadens the scope of the indictment beyond that returned by the grand jury. *See, e.g., United States v. Milstein*, 401 F.3d 53, 64-66 (2d Cir. 2005) (finding constructive amendment and vacating conviction on relevant count when indictment charged defendant with misbranding drugs because they were re-packaged, but

---

[1] While not in evidence, the government well knows that Mr. Kimble never – in his over 100 proffers – stated to government agents, that he spoke to Mr. Naumovski about any hidden ownership in Life Source. Further, the government, once establishing Mr. Chmiel shared his ownership (secretly) with Mr. Kimble never followed up to ask Mr. Chmiel whether Mr. Naumovski was informed of that fact.

government offered evidence that the drugs were misbranded because they were not sterile). A constructive amendment "is a *per se* violation of the Fifth Amendment." *Milstein*, 401 F.3d at 65; *see also United States v. Fisher*, 3 F.3d 456, 462–63 (1st Cir.1993) ("A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecution or court after the grand jury has last passed upon them." (internal quotation omitted)); *United States v. Iacaboni*, 363 F.3d 1, 7 (1st Cir. 2004). Similarly, when the evidence offered by the government at trial establishes "facts materially different from those alleged in the indictment," and a defendant is thereby prejudiced in his ability to defend himself, the variance constitutes reversible error. *United States v. Thomas*, 274 F.3d 655, 670 (2d Cir. 2001) (quotation omitted). Likewise, a material variance with the terms of the indictment that is, like here, highly prejudicial, requires judicial relief.

There can be no debate that the indictment in this case did not charge or notice that the purported fraudulent filing of an 855s Form was within the scope of the conspiracy. Indeed, as detailed above, the indictment is silent on that issue. By arguing that the alleged filing of a false 855s is *solely* sufficient to convict Mr. Naumovski, the government not only abandoned its charged conspiratorial theory, but also expanded and changed the scope of the conspiracy to encompass conduct that was not charged, not noticed, and could not be subjected to any adversarial testing given that the government's newly argued bases of liability was first disclosed during its rebuttal argument. There is simply nothing in the indictment alleging that as part of the purported conspiracy Mr. Naumovski, Mr. Chmiel, Mr. Kimble, or anyone else conspired to hide their ownership of a DME provider.

Furthermore, this argument, made during rebuttal, without an opportunity for the defense to respond, was improper. Rebuttal summation provides the government an opportunity to respond to the defense's arguments in summation, but the government "may not use the defense's comments to justify the reference to facts or the assertion of claims which it could have, but did not, introduce at trial unless defense counsel's remarks assert collateral, exculpatory alibis or defenses which the government would not have been expected to negate previously." *United States v. Rubinson,* 543 F.2d 951, 966 (2d Cir.1976); *see also United States v. Giovanelli,* 945 F.2d 479, 496 (2d Cir.1991) (Newman, J., concurring). Here, the defense never argued anything "the government would not have been expected to negate previously." *Rubinson,* 543 F.2d at 966. Indeed, the defense's closing focused on Mr. Naumovski's reliance on Mr. Chmiel and the King & Spalding opinion letters that were provided to him and Mr. Naumovski's lack of willfulness and knowledge regarding Doctor's Order, rather than any argument focused on his lack of responsibility for an 855 Form regarding ownership – all of which were addressed by the government in its closing statement. Rather than rebut, the government, on rebuttal, used its time to introduce an entirely new theory of liability. Improper statements made during summation require a new trial when such statements "cause[d] the defendant substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Shareef,* 190 F.3d 71, 78 (2d Cir. 1999) (internal citations and quotation marks omitted); *see also United States v. Edwards,* 342 F.3d 168, 181 (2d Cir. 2003). The defense respectfully contends that mistrial is warranted under the circumstances of this case where the

government bases its argument on incomplete and inaccurate facts and introduces a new theory of liability without notice prior to or during the trial.[2]

Alternatively, the defense respectfully requests this Honorable Court to provide a curative instruction that states:

> During its rebuttal argument, the government argued to you that you can convict solely based on a single omission in the 855 Form – that Mr. Naumovski committed health care fraud solely because Mr. Kimble was not named as an owner of Life Source. I instruct you that the argument was improper, the argued theory is not a valid basis of conviction, and is not the conduct that is charged in the indictment. The indictment in this case charges Mr. Naumovski of conspiring with Mr. Chmiel and/or others to execute a scheme whereby they submitted and caused the submission of false and fraudulent claims to Medicare for DME that were (1) not medically necessary, and (2) either not provided to the Medicare beneficiary or provided based on orders procured through bribes and kickbacks. You are instructed that the omission from the 855 cannot, standing alone, be the basis of conviction.

Such an instruction would ensure that the jury understands what the indictment charges, *i.e.,* the submission of false and fraudulent claims through bribes and kickbacks and not the false and fraudulent submission of an 855s Form. *See United States v. Comfort Gates*, 624 F. App'x 893, 897 (5th Cir. 2015) ("the district court employed many of the curative measures recognized by our court to protect against a constructive amendment of the indictment, such as: instructing the jury to only consider the crime charged in the indictment; instructing the jury that the Defendants–Appellants were not on trial for any offense not alleged in the indictment; including the language from the Superseding Indictment in the jury charge; and providing the jury with a copy of the indictment for their deliberations."); *United States v. Salameh*, 152 F.3d 88, 145 (2d Cir. 1998) (providing curative instruction).

Respectfully,

Maksim Nemtsev
Timothy R. Flaherty

CC:   Miriam L. Glaser Dauermann, U.S. Department of Justice (by ECF)
      Patrick J. Campbell, U.S. Department of Justice (by ECF)

---

[2] The defendant reserves the right to argue that any mistrial be with prejudice given that the government has through its clearly improper rebuttal argument caused the defense to seek a mistrial.