UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

               v.

GORGI NAUMOVSKI,

                            Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
20-CR-384 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 16, 2024, Gorgi Naumovski ("Defendant") pled guilty to a single-count Indictment charging with him Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349. Indictment ¶ 37, ECF No. 1; Plea Agreement ¶ 1, ECF No. 123. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to two (2) years' probation with both the standard and special conditions, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); forfeiture of $238,865.87; restitution of $1,876,466.49; and a $100.00 mandatory special assessment.

## I. Background

From approximately April 2016 to December 2018, Defendant, together with others, submitted over $4.1 million in "false and fraudulent" claims to Medicare Part B. Sealed Presentence Investigation Report ("PSR") ¶¶ 6, 9, 12, ECF No. 131. Defendant and Co-Conspirator #1 owned and operated a durable medical equipment ("DME") supplier enrolled in Medicare Part B called Life Source Medical, Inc. *Id.* ¶ 8. Medicare Part B covers DME "actually provided [to Medicare beneficiaries], medically necessary, ordered by a physician, and not induced by the payment of remuneration, including bribes and kickbacks." Indictment ¶ 2.

Defendant and his co-conspirators paid doctors for completed prescriptions and related documents necessary to submit claims to Medicare for DME in the form of orthotic braces supplied by Life Source Medical. PSR ¶ 7, 10. The doctors would often supply these documents "regardless of medical necessity, without a pre-existing doctor-patient relationship [with the Medicare

1

beneficiary], [and] without a physical examination." *Id.* ¶ 11. Defendant and Co-Conspirator #1 disguised these payments in Life Source Medical's accounting as "legitimate business expenses." *Id.* ¶¶ 9–10. Medicare Part B paid more than $1.8 million on the fraudulent claims. *Id.* ¶ 12.

On September 18, 2020, a grand jury returned a single-count Indictment against Defendant charging him with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349. Indictment ¶ 11. Defendant pled guilty to the Indictment on January 16, 2024. Plea Agreement ¶ 1.

## II. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal citations omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

2

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### *1.     Family and Personal Background*

Defendant was born in Toronto, Canada, on February 27, 1968. PSR ¶ 37. Defendant's parents immigrated to Canada from former Yugoslavia in 1964 and married in 1967. *Id.* ¶ 38. Defendant's father is a retired kitchen worker; his mother is a retired factory worker. *Id.* ¶ 37. They live together in Whitby, a town in the Ontario Province of Canada, and are of fair health for their age. *Id.* They are aware of the instant offense and supportive. *Id.*

Defendant does not have any siblings but was raised alongside a large extended family including thirty-two first cousins. *Id.* ¶ 38. Defendant's parents worked long hours, and Defendant spent a lot of time growing up with his maternal aunt and grandparents. *Id.* All Defendant's basic needs were met, his parents were loving, and he did not experience any abuse or neglect. *Id.* Defendant said he "couldn't ask for better parents." *Id.*

Defendant married his first wife in Toronto in 1989. *Id.* ¶ 39. They have four children, all of whom live in Ontario, Canada. *Id.* They separated in 2003 and maintain limited, but amicable, contact. *Id.* Defendant's children are aware of the instant offense and supportive. *Id.*

Defendant met his current wife in 2007 in Chicago, Illinois. *Id.* ¶ 41. Defendant's wife is an Illinois native; Defendant relocated to the state to pursue their relationship. *Id.* The couple married in Du Quoin, Illinois, in 2010. *Id.* Defendant's wife has a daughter from a prior relationship who lives with her and Defendant in Illinois. *Id.* ¶¶ 41, 43.

3

Defendant's wife is aware of the instant offense and supportive. *Id.* She is worried Defendant will lose his legal-resident status in the United States because of the instant offense. *Id.* ¶ 42. She indicates, however, she and Defendant plan to eventually relocate to a residence they purchased in Canada to be closer to Defendant's children and parents. *Id.*

    2.    *Educational and Employment History*

Defendant attended grade school at Danforth Gardens Public School in Toronto from 1973 to 1983. *Id.* ¶ 51. Defendant earned his high school diploma from W.A. Porter Collegiate Institute in Toronto in 1987. *Id.* ¶ 52. Defendant worked in a variety of industries in Canada before immigrating to the United States in 2010. *See id.* ¶¶ 63–64.

From 2010 to 2016, Defendant worked as a fabricator at Kabinet House in Du Quoin Illinois and Whitby, Ontario, earning from $800.00 to $1,000.00 per week. *Id.* ¶ 62. From 2014 to 2015, Defendant worked part time as an Office Manager at Freedom Medical in Du Quoin, Illinois, earning an annual salary of $35,000.00. *Id.* ¶ 61. Freedom Medical sold medical products such as back braces and diabetic test strips. *Id.*

From 2016 to 2018, Defendant co-owned and operated Life Source Medical, a DME supplier primarily based in Greensboro, North Carolina. *Id.* ¶ 60. The company permanently closed in connection with the instant offense. *Id.* Defendant earned an annual salary of $48,000.00 from Life Source Medical. *Id.*

From 2018 to 2020, Defendant worked as a manager responsible for identifying areas of expansion at Justice Grown, an owner and operator of licensed-cannabis dispensaries headquartered in Chicago, Illinois. *Id.* ¶ 59. Defendant earned an annual salary of $175,000.00 in this role. *Id.* He was encouraged to leave this position following his arrest for the instant offense. *Id.*

4

In 2014, Defendant and his wife opened a cannabis-dispensary company based in Du Quoin, Illinois. *Id.* ¶ 57. They sold the business to MariMed, Inc., in 2019, but stayed on to manage the day-to-day operations of MariMed's licensed-dispensary business in Illinois. *Id.* Defendant earns an annual salary of $200,000.00 from this role. **Sealed** Addendum to PSR, ECF No. 132. His employers are aware of the instant offense. PSR ¶ 57.

Since 2021, Defendant has worked as Director of Operations at Wyndance Retail, a retail design company owned by his wife based in Du Quoin, Illinois. *Id.* ¶ 58. The company focuses on real-estate development in connection with the legal-cannabis industry. *Id.*

Defendant and his wife earned a joint income of over $600,000.00 annually in 2020, 2021, and 2022. **Sealed** Probation Sentencing Recommendation at 2, ECF No. 131-1.

   3.   *Prior Convictions*

Defendant has no prior criminal history. *Id.* ¶ 32.

   4.   *Physical and Mental Health*

Defendant was diagnosed with testicular cancer in 2008. *Id.* ¶ 46. He underwent surgery that same year and is in remission. *Id.* Defendant experienced some heart trouble at the beginning of 2023 but has been without issue since. *Id.* ¶ 47. In January 2024, Defendant was diagnosed with hypertension, which he treats with diet and exercise. *Id.* Defendant reports no history of mental or emotional health problems. *Id.* ¶ 48.

   5.   *Substance Abuse*

Defendant does not have a history of alcohol or illicit substance abuse. *Id.* ¶ 49. He does not currently consume cannabis despite working in the industry. *Id.* ¶ 50.

> 6. *Nature and Circumstances of the Offense*

The Court's previous statements make clear the nature and circumstances surrounding the instant offense. *See supra* Part I.

**B. The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense. He stole millions of dollars of Government money earmarked for the health care of elderly and disabled United States citizens. *See supra* Part I. He stole this money despite his high income and comfortable economic circumstances. *See supra* Part III.A.2. The Court's sentence justly punishes Defendant for his crimes and will deter others from engaging in similar acts.

**C. The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349. Defendant faces a statutory maximum of ten years' imprisonment and no minimum term. 18 U.S.C. §§ 1347(a), 1349. He faces a statutory maximum of three years' supervised release and no minimum term. 18 U.S.C. § 3583(b)(2). He faces a statutory maximum of five years' probation and a minimum term of one year. 18 U.S.C. § 3561(c)(1). One of the

following must be imposed as a condition of probation in the absence of extraordinary circumstances: a fine, restitution, or community service. 18 U.S.C. § 3563(a)(2).

Defendant faces a maximum fine of $250,000.00, or twice the gross gain or twice the gross loss, whichever is greater. 18 U.S.C. § 3571(b). He owes a $100.00 mandatory special assessment. 18 U.S.C. § 3013. He owes forfeiture of $238,865.87. *See* Order of Forfeiture, ECF No. 125. He has already paid half this amount pursuant to the Order of Forfeiture. *See* Process Receipt and Return, ECF No. 137. Finally, Defendant faces potential revocation of his legal-resident status in the United States and deportation to Canada. Sealed Probation Sentencing Recommendation at 2; Plea Agreement ¶ 16.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

Defendant was convicted under 18 U.S.C. § 1349 for conspiring to violate 18 U.S.C. § 1347. The applicable Guideline for violations of 18 U.S.C. § 1347 is U.S.S.G. §2B1.1. Defendant has a base offense level of six under U.S.S.G. §2B1.1(a)(2) because 18 U.S.C. § 1347 has a statutory maximum term of imprisonment below twenty years. Eighteen levels are added under U.S.S.G. §2B1.1(b)(1)(J) because Defendant's offense involved losses above $3,500,000.00 but below $9,500,000.00. Two levels are added under U.S.S.G. §2B1.1(b)(1) because Defendant committed a federal-health-care offense involving losses above $1,000,000.00. These enhancements bring Defendant's total offense level to twenty-six.

Two levels are reduced under U.S.S.G. §§4C1.1(a) because Defendant is a zero-point offender: he has no prior criminal history and satisfies the requirements set forth in U.S.S.G.

4Case 1:20-cr-00384-WFK    Document 140    Filed 03/18/25    Page 8 of 11 PageID #: 1584

§4C1.1(a). Three levels are reduced under U.S.S.G. §3E1.1 for Defendant's timely acceptance of responsibility. These reductions bring Defendant's total adjusted offense level to twenty-one.

All parties agree Defendant has a total adjusted offense level of twenty-one. All parties agree Defendant has a criminal history category of I. A total offense level of twenty-one, combined with a criminal history category of I, results in a Guidelines range of 37–46 months' imprisonment.

Probation recommends a sentence of twenty-four months' imprisonment followed by two years' supervised release with special conditions; restitution of $1,876,466.49, due immediately and payable at a rate of $25.00 per quarter while in custody and a rate of 10% gross monthly income while on supervised release; and a $100.00 mandatory special assessment. Probation Sentencing Recommendation at 1. Probation contends, "since [Defendant] and his wife remain self-employed within the marijuana business, a business that is not federally regulated, a special condition is recommended to ensure the Probation Department can investigate and approve any position of self-employment." *Id.* at 3. Probation believes a custodial term is necessary to reflect the seriousness of the offense. *Id.*

The Government recommends a sentence of probation, with full restitution of $1,876,466.49 and forfeiture of $238,865.87. Government Sentencing Memorandum ("Gov't Sentencing Mem.") at 1, ECF No. 138. The Government contends a "sentence of probation would provide specific deterrence by offering a period of ongoing supervision wherein the defendant would find it difficult to commit more crimes." *Id.* at 5. This sentence would also "send the message that committing health care fraud will result in a criminal sanction regardless of the personal profits made by the person who transgresses the law." *Id.*

Defense counsel agrees with the Government's recommendation, arguing a sentence of probation "properly takes into consideration the nearly five years [Defendant] spent on pre-trial

release, the toll that this prosecution has taken on him and his family, his voluntary disgorgement of any gains from his conduct, and the substantial collateral consequences likely to follow, including the loss of his permanent resident status [and] the prohibition on his return to the United States." Defendant Sentencing Memorandum ("Def. Sentencing Mem.") at 1–2, ECF No. 136. Defense counsel submits myriad letters from, among others, Defendant's children, wife, extended family, neighbors, associates, and employees commending his "generosity," "loyalty," and "love for family." *See* Def. Sentencing Mem. at 2–8.

Defense counsel challenges the notion Defendant's current employment in the licensed-cannabis industry poses a risk of recidivism, submitting a letter from Mary Keen, a Drug Compliance Investigator with the Medical Cannabis Unit of the Illinois Department of Financial and Professional Regulations (the "Division"). Supplement to Def. Sentencing Mem., ECF No. 139. Ms. Keen is one of the investigators assigned to inspect Defendant's dispensaries on a quarterly basis to confirm their compliance with Illinois state regulations.

Ms. Keen states Defendant "has always demonstrated honesty and transparency when working with the Division. Required documentation was submitted in a timely manner and [Defendant's] dispensaries have been compliant with all directives and recommendations. Security and inventory reconciliation are of the utmost importance to the Division; [Defendant's] dispensaries, under the leadership of [Defendant] and his partners, have always placed an emphasis on these issues and there are no deficiencies in these areas during regular, routine inspections." *Id.*, Ex. A, ECF No. 139-1. Ms. Keen credits this history of regulatory compliance to Defendant's "commitment to compliance and knowledge of state regulations." *Id.*

The Court appreciates the parties' arguments and has considered each in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding no others on its own, the Court proceeds to the next § 3553(a) factor.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). As explained, restitution is mandatory in this case under 18 U.S.C. § 3663A. The Court reserves its right under 18 U.S.C. § 3664(d)(5) to hold an evidentiary hearing within ninety days after this sentencing to determine issues of restitution.

## IV. CONCLUSION

For the reasons set forth above, the Court sentences Defendant two (2) years' probation with both the standard and special conditions, excepting the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d); forfeiture of $238,865.87; restitution of $1,876,466.49; and a $100.00 mandatory special assessment. This sentence is sufficient but no greater than necessary

to accomplish the purposes of § 3553(a)(2). The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Sealed Presentence Investigation Report and Addendum thereto, as corrected herein, to the extent those findings are not inconsistent with this opinion.

SO ORDERED.

**s/ WFK**

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: March 18, 2025
Brooklyn, New York

11